**Mary A. NICHOLS, Individually and as Administrator of the Estate of David E. Nichols, Appellee,**

v.

**Marilyn SCHWEITZER, Appellant.**

**Nancy L. WEST and Steven W. West, Individually and on behalf of their minor children, Jodi L. West and Bret S. West, Appellees,**

v.

**Marilyn H. SCHWEITZER and James Schweitzer, Appellants,**

**and**

**Mary Nichols, Administrator of the Estate of David E. Nichols, and Daniel Thompson, Defendants.**

No. 89–1507.

Supreme Court of Iowa.

June 19, 1991.

William H. Roemerman and Brad J. Brady of Crawford, Sullivan, Read, Roemerman & Brady, Cedar Rapids, for appellants.

Charles T. Traw of Leff, Leff, Leff, Haupert & Traw, Iowa City, for appellee Mary Nichols.

Robert N. Downer and Paul J. McAndrew of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellees West.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

On February 18, 1987, at approximately 3:25 p.m., defendant, Marilyn Schweitzer, was driving an automobile owned by her and her husband, James Schweitzer, east on Iowa Highway 22 between the towns of Wellman and Kalona. Also heading east, somewhere behind the defendant, was David Nichols. Nichols was driving a semi tractor-trailer combination loaded with live hogs. At the same time, plaintiff, Nancy West, was driving a school bus west on the same highway.

Highway 22, in the area where the accident occurred, descends into the English River Valley. The highway crosses the English River by means of two sequential bridges (commonly known as the "twin bridges"). The bridge to the east crosses the main channel of the river while the bridge to the west is the "overflow bridge." Eastbound vehicles approach these bridges by means of a long sweeping curve in the roadway.

As Marilyn Schweitzer approached the westerly bridge from the east, she noticed the oncoming bus operated by Nancy West. The record reflects that Schweitzer determined that at her present speed, she would meet the bus on the bridge, and felt she could not safely traverse the bridge while it was occupied by the bus. She therefore decided to reduce her speed to allow the bus to proceed through the bridge first. Schweitzer testified that she reduced her speed by tapping her brakes to release the cruise control and then let the car gradually decelerate against its engine. She also testified that she did not again use her brakes until she saw that the semi operated by Nichols was passing her and that a collision between the truck and bus was imminent.

As Schweitzer decelerated, Nichols pulled into the left (westbound) lane to pass her. Nichols did not regain his own lane prior to colliding with the school bus driven by West. Schweitzer did not collide with any vehicle. As a result of the accident, Nichols died and West was severely injured.

Mary Nichols, David Nichol's wife, sued Marilyn and James Schweitzer on behalf of herself and as administrator of David's estate. In a separate action, Nancy West and her family sued the Schweitzers, Mary Nichols as administrator of her husband's estate, and David Nichols' employer, Daniel Thompson. The two lawsuits were consolidated by the court for purposes of discovery and trial. Prior to trial, the Wests settled their claims against Mary Nichols and Daniel Thompson.

The case proceeded to trial. The jury determined that West was zero percent at fault, Mary Schweitzer was forty-nine percent at fault, and David Nichols was fifty-one percent at fault. The court entered a judgment in favor of Nichols against the Schweitzers for $82,000 for loss of spousal consortium based on the jury's determination. The court also entered judgment for the Wests against the Schweitzers reduced by the percentage of fault of Nichols, with whom the Wests had settled. However, the court did not reduce Mary Nichols' consortium recovery by the percentage of fault attributed to her husband.

The Schweitzers now appeal alleging that the district court erred in: (1) holding that the fault of Nichols, the deceased semi driver, did not reduce his wife's consortium claim; (2) giving Nichols and the Wests

four jury strikes each and only giving the Schweitzers six strikes instead of eight; (3) instructing the jury on an alleged violation of failing to use brake lights; and (4) failing to allow a state trooper to testify concerning the chronology of events leading up to the accident. We affirm.

■ Our scope of review is determined by the nature of the trial proceedings. *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 257 (Iowa 1991). This action was filed and tried at law. Therefore, our review is for correction of errors at law. Iowa R.App.P. 4.

## I. *Comparative Fault and Consortium.*

■ In Instruction No. 22, the trial court advised the jury on the law applicable to any fault of David E. Nichols and its effect on any recovery by his wife, Mary A. Nichols. Instruction No. 22 stated that:

After you have compared the conduct of the Defendant, Marilyn Schweitzer, David E. Nichols, and Nancy West, if you find David E. Nichols was at fault and his fault was more than 50% of the total fault, the Plaintiff, Mary A. Nichols as Administrator of the Estate of David E. Nichols cannot recover the damages set forth as items 1 through 3, inclusive, of Instruction No. 35.

However, if you find David E. Nichols' fault was 50% or less of the total fault, then I will reduce the total damages by the amount awarded under items 1 through 3 inclusive of Instruction No. 35 by the percentage of fault of David E. Nichols.

Instruction No. 35 stated that:

If you find Mary A. Nichols, as Administrator of the Estate of David E. Nichols, is entitled to recover, it is your duty to determine the amount. In doing so, you shall consider the following items in determining an amount which will fully compensate the Estate of David E. Nichols for the damages incurred:

1. Present value of the additional amounts David E. Nichols could reasonably be expected to have accumulated as a result of his own effort if he had lived out the normal term of his natural life.

2. The interest on the reasonable burial expenses of David E. Nichols from the time of his death until the time when those expenses would be paid. The amount cannot exceed the reasonable cost of the burial, which in this case is $4,072.32.

3. The present value of the amount of financial support which David E. Nichols would have contributed to his spouse, Mary A. Nichols, but for his death. Damages for financial support are limited in time to the shorter of David E. Nichols' or Mary A. Nichols' normal life expectancy.

4. The present value of the services which David E. Nichols would have performed for Mary A. Nichols but for his death. This is also known as loss of spousal consortium. "Spousal consortium" is the fellowship of a husband and a wife and the right of each to the benefits of company, cooperation, affection, the aid of the other, in every marital relationship, a general usefulness, industry, and attention within the home and family. It does not include loss of financial support from the injured spouse. Damages for spousal consortium are limited in time to the shorter of Mary A. Nichols' or David E. Nichols' normal life expectancy.

The jury found that David E. Nichols was fifty-one percent at fault which thereby barred a recovery by his wife for items 1, 2 and 3 of Instruction No. 35. Item 4 which allowed a recovery for loss of spousal consortium remained viable. On this issue the jury awarded Mary A. Nichols $82,000.

Jury Instruction No. 22A spoke to this issue as follows:

When you consider the Plaintiff's claim for loss of spousal services, also known as spousal consortium, to Mary A. Nichols, you will not charge Mary A. Nichols with the fault of any other person, and I will not reduce the amount of damages awarded for this claim.

On receiving the jury verdict, the court did not offset any fault of David E. Nichols against the award of $82,000 to his wife, Mary, for loss of consortium, even though he was adjudged fifty-one percent at fault for the accident. This was consistent with Jury Instruction No. 22. Appellants Schweitzer, however, assert this as an error of law on the ground that the fifty-one percent fault should bar the consortium claim of David's wife, Mary.

We have previously considered the effect of fault by an injured person on the spouse's claim for loss of consortium. In *Fuller v. Buhrow*, 292 N.W.2d 672, 676 (Iowa 1980), we decided that a spouse who has been deprived of consortium through the negligence of a third party should not be barred by the negligence of his own spouse. Later, in *McIntosh v. Barr*, 397 N.W.2d 516, 518 (Iowa 1986), we held that a husband may not be required to contribute to a judgment in favor of his wife against a third-party tortfeasor arising out of the husband's injury due in part to his own negligence. The *McIntosh* jury found that Barr's wife, Joan, had incurred damages for loss of her husband's consortium in the amount of $25,000. Although her husband Richard Barr was thirty-five percent at fault in the accident, her consortium damages were not reduced thereby. We reasoned that:

> The services, society, companionship, affection, and other elements of consortium are valuable and necessary ingredients of a satisfactory interspousal relationship. They are not, however, the kind of services the deprivation of which will give rise to a tort action between spouses....
>
> ....
>
> A husband's interest in consortium is a right to such services as his wife voluntarily provides him, and the law protects this interest against interference by third parties. However, because the husband's interest is only in services voluntarily provided him, a wife is not under a legally enforceable duty to provide such services. Consequently, she cannot be held liable for either negligently or intentionally denying him consortium.

*McIntosh*, 397 N.W.2d at 517–18.

When no liability could attach to Richard Barr's actions regarding his wife's damages, the negligent third party could not benefit from an offset of Richard's negligence. *Id.*

Appellants Schweitzer correctly point out that these cases involve the loss of consortium from an injured spouse rather than a deceased spouse as in the present case. Their argument is that this difference is crucial.

The crux of appellants' argument is that when the spouse injured in an accident has died, the legal remedies available are through the personal representative in the estate of the deceased spouse. From that circumstance flow all of the legal consequences of defenses to a claim and of contribution to the payment of damages. The authority most relied upon by appellants is *Wilson v. Iowa Power & Light Co.*, 280 N.W.2d 372 (Iowa 1979). In that case, we held that the legal remedy in Iowa for wrongful death is based on a concept that the cause of action survives. *Id.* at 373–74. It is derivative in nature, meaning that it derives from the action the deceased would have had if he had lived. *Id.* As such, defenses to a claim by the deceased that he might have brought while living are also available in the same kind of a suit brought by his personal representative after death. Thus, *Wilson* held that the defense of contributory negligence by a deceased spouse was available to bar a claim by his spouse for wrongful death based on a loss of services and support. *Id.* at 374. The *Wilson* decision also held that this was the law under our wrongful death statute, Iowa Code § 613.15 (1975), whose elements for recovery were unaffected by a 1976 amendment to section 633.336. *Id.* That amendment changed the manner of distribution of damages by the personal representative of the deceased to assure that the surviving spouse and children received the money damages due them from the wrongful death. *Id.* (citing 1976 Iowa Acts ch. 1227, § 4).

In the *Wilson* case, the plaintiffs initially sued for a loss of consortium. They abandoned this claim, however, during trial when the evidence showed that the deceased died instantly. The individual loss-of-consortium claim was limited to damages sustained in the period between injury and death. The *Wilson* opinion specifically reserved the question whether plaintiffs' separate action for loss of consortium would have been subject to the contributory negligence defense. *Id.* at 375 (citing *Irlbeck v. Pomeroy*, 210 N.W.2d 831, 833–34 (Iowa 1973)).

Since the *Wilson* opinion, Iowa abandoned the defense of contributory negligence in its tort law and has moved from a comparative negligence to a comparative fault system. Our court since *Wilson* has also decided several cases involving various corollary issues to the issue considered in the present case. We now recognize that spousal consortium is an indivisible concept and embodies both the "sentimental" elements of a marital relationship and the "services" or "material" elements of that relationship. *Audubon–Exira v. Illinois Cent. Gulf R.R.*, 335 N.W.2d 148, 151 (Iowa 1983). We also determined that the damages to the deprived spouse for loss of consortium continue after death of an injured spouse for the period of the lesser of their two life expectancies. *Id.* at 153. To avoid a double recovery, section 613.15 designates the personal representative of the deceased as the proper party to bring a suit for the loss of consortium of the deprived spouse. The independent claim of the deprived spouse thus passes to the administrator on death of the injured spouse. *Id.* The distinction between predeath and postdeath rights to sue was reiterated by our court in *Madison v. Colby*, 348 N.W.2d 202, 209 (Iowa 1984). There, the right to sue for loss of predeath consortium was again held to remain with the deprived spouse, not the injured person. *Id.* at 208.

We have also in a slightly different context considered the relationship between the capacity to sue and the ownership of the cause of action. *Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308 (Iowa 1982), decided that jurisdiction of a wrongful death action was not lost when the personal representative was discharged and subsequently reappointed. We said:

> Iowa Code section 611.22 provides that only the legal representative has authority to bring the action, whereas Iowa Code sections 613.15 and 633.336 outline the measure of recovery and provide for the apportionment of the recovery between the spouse, parent, and the estate. In maintaining the wrongful death action the personal representative acts in the capacity of a trustee for the benefit of the recipient of the damages.
>
> . . . .
>
> Initially, we believe that the capacity to sue must be distinguished from the cause of action for wrongful death. A capacity to sue is the right of a party to come into court, while, on the other hand, a cause of action is the claim itself, the right to relief in court. While it is necessary that there be a party plaintiff to commence and maintain a cause of action, the parties and the claim are separate and they exist apart from each other.

*Troester*, 328 N.W.2d at 312, 313 (citations omitted).

Recently, we dealt with the question of apportionment of damages under Iowa Code chapter 668 for loss of consortium. The issue in *Schwennen v. Abell*, 430 N.W.2d 98 (Iowa 1988), considered the effect of an injured spouse's fault on the other spouse's claim for loss of consortium. At trial, a jury found that Mary Abell had sustained damages in the amount of $85,000 for her loss of William's consortium. The jury apportioned fault as follows: William Abell, sixty-three percent; the Schwennen defendants, twenty-seven percent; Floyd County, ten percent. In considering the apportionment of damages, we held that Mary Abell's consortium damages should not be reduced by William Abell's fault and that that fault must be apportioned among the Schwennen defendant and Floyd County by subsequent trial. *Id.* at 104. This holding carried out our reasoning that as a policy matter innocent parties who have suffered a loss should not

have their recovery diminished as a result of acts of another party whose fault is not imputed to them under statutory or common-law rules.

Realistically, there is no fair reason for having a different result on apportionment of consortium damages when the injured spouse has died than when he is alive. We criticized the anomaly that prior to *Audubon–Exira* the law permitted a consortium recovery for an injured spouse or parent but denied a recovery for a more grievous loss when the spouse or parent was killed. 335 N.W.2d at 149. After thorough analysis, we changed the law and brought consistency to these rules of law.

Our considerable jurisprudence on these issues has often come from the procedural and conceptual difficulties that naturally flow from the interrelationships of common-law and statutory remedies. *See Schwennen,* 430 N.W.2d 98; *McIntosh,* 397 N.W.2d 516; *Madison,* 348 N.W.2d 202; *Audubon–Exira,* 335 N.W.2d 148; *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981); *Fuller,* 292 N.W.2d 672; *Wilson,* 280 N.W.2d 372; *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632 (Iowa 1969). In melding these principles, we have advanced the ameliorating principles of our law of remedies while retaining the necessary procedural structures for effective adjudication.

In the present case, the claim for loss of consortium was properly brought through sections 611.20, 611.22 and 613.15 (1987) by Mary Nichols as administrator of David Nichols' estate. The administrator derives whatever liability her decedent might have had through section 611.20. However, David Nichols would not have been liable for his own negligence to a third-party tortfeasor during his life for damages due to his spouse, Mary, for loss of consortium. *See McIntosh,* 397 N.W.2d at 517–18. Neither would his fault be considered, if he had lived, to reduce her consortium damages when third parties are found to be at fault pursuant to chapter 668. *See Schwennen,* 430 N.W.2d at 100–01. We therefore find that no liability can attach to Mary, as David Nichols' administrator, for David's fault on either a direct or aggre-

gate fault theory to reduce her recovery for loss of David's consortium. The trial court's instruction and judgment entry following the jury verdict were correct.

## II. *Jury Selection.*

■ The Schweitzers assert they are entitled to a new trial because of the way the trial court handled the process of jury selection. Error is claimed in that they were given six juror strikes while plaintiffs Nichols got four and plaintiffs West got four. Schweitzers also claim that the selection process was not alternated, thus violating the rules.

Nichols and Wests respond that the court treated the Schweitzers extremely fairly in granting them two more strikes than the four to which they were entitled. These contrasting positions come from whether the consolidation of the lawsuits is viewed as creating a three-sided lawsuit or two two-sided lawsuits.

The Schweitzers point to Iowa Rule of Civil Procedure 187(g) as being violated. That rule states:

> *Number-striking.* Each side must strike four jurors. Where there are two or more parties represented by different counsel, the court in its discretion may authorize and fix an additional number of jurors to be impaneled and strikes to be exercised. After all challenges are completed, plaintiff and defendant shall alternately exercise their strikes.

The ruling on the number of strikes was made by the court, over objection, at a pretrial conference. Then and at trial time the following suits were pending:

1. The Estate of David Nichols had sued Marilyn Schweitzer;

2. West had sued Schweitzer and the Nichols Estate;

3. Schweitzer had cross-claimed against Nichols for contribution on the West claim;

4. Nichols had counter claimed against West in the suit filed by West; and

5. West had cross-claimed against Schweitzer on the Nichols claim.

Although at trial time the Wests and Nichols had settled their claims against each other, they were still adverse toward each other with regard to the issue of fault. To the extent either could shift fault to the other, the successful party could thereby maximize his or her recovery.

We have held many times that a trial court is vested with broad discretionary power in acting on challenges for cause. *State v. Houston,* 206 N.W.2d 687, 689 (Iowa 1973). The test for reversible error is whether an abuse of discretion has occurred by the trial court.

Our review in this area has also been curtailed in past cases by counsel's failure to make appropriate objections. In *Turner v. Jones,* 215 N.W.2d 289, 290–91 (Iowa 1974), it was discovered after trial that a juror was a part-time employee of plaintiff's lawyer. The juror was not challenged for cause nor was it suggested that she could have been. In rejecting the plea for a new trial we said:

> The situation does not approach misconduct or irregularity on the part of the juror. We certainly cannot judicially note a law firm's cleaning woman would necessarily be influenced toward the firm's client. Even when jury misconduct is shown it is not enough. There must appear also the reasonable probability such misconduct influenced the verdict. In any event the failure of defendant's counsel to question the juror on the subject waives any objection. All challenges, both those known and those which could have been ascertained by questioning, are waived if no challenge is made before the jury is sworn.

*Turner,* 215 N.W.2d at 290–91 (citations omitted). We confirmed this rule in *State v. Cuevas,* 288 N.W.2d 525, 534 (Iowa 1980), where we stated that:

> Defendant's objection to the juror Oakes on the basis of bias is waived for his failure to assert it earlier. "It is well settled that known objections, or those which may be ascertained, are waived if no challenge is made before the jury is sworn." *State v. Grove,* 171 N.W.2d 519, 520 (Iowa 1969).

Schweitzers complain that when they were given six instead of eight juror strikes they were unable to remove some jurors who were potentially unfavorable to them. Schweitzers did challenge three jurors for cause unsuccessfully and later removed them by using three of their six strikes. Three other jurors about whom they now complain were not challenged for cause. The reason given is that they believed the trial court was reluctant to grant challenges for cause so the Schweitzers were forced to use some of their juror strikes on potential jurors who had preconceived notions of the case. We view this as a wholly inadequate reason for failing to voice objections for cause. No preconceived notion of counsel that an objection will be overruled can support a failure to make a record of what the court would actually do. The premise from which this error of law proceeds is hollow.

In *Wilson v. Ceretti,* 210 N.W.2d 643 (Iowa 1973), we examined the effect of error in granting excessive peremptory challenges to defendant. We held that the offended party is entitled to relief upon showing, to the satisfaction of the court:

> (1) actual resultant prejudice, or
> (2) a clear and convincing probability of resultant prejudice.

*Id.* at 646. On the record before us it is clear that Schweitzers have failed to meet the requirement of either test. Each of the two suspect jurors left on the jury stated under repeated questioning that he could fairly and impartially evaluate the evidence.

It is important to note that the trial court's decision on the number of strikes accorded to the parties was made before trial, not after all of the evidence had been presented. From the beginning each party was represented by separate counsel and under Iowa Rule of Civil Procedure 187(g) was entitled to four strikes. In viewing the numerous cross claims of the parties as laid out before the trial, the court attempted to strike a balance by awarding the Schweitzers two more strikes.

We find this was a fair result and within the ambit of our rules. Iowa Rule of Civil

Procedure 187(g) by its own terms speaks of the court's discretion. Our standard on finding an abuse of discretion requires that the reasons for the trial court's actions are clearly unreasonable. *Sheer Constr., Inc. v. W. Hodgman & Sons, Inc.*, 326 N.W.2d 328, 334 (Iowa 1982); *see also Rath v. Sholty*, 199 N.W.2d 333, 336 (Iowa 1972).

■ Having allowed the extra two strikes to Schweitzers, the court directed that the strikes be exercised first by the Wests, then by the Schweitzers, then by the Nichols, then by the Schweitzers, and continuing until all strikes were exercised. Schweitzers objected to this proceeding and requested that the parties exercise their strikes in rotation. The result of this format was that both defendants exercised their final strikes after Schweitzers exercised theirs. Schweitzers say that if their proposed rotation had been used, the Nichols or Wests might have stricken a person the Schweitzers eventually struck. This would have allowed the Schweitzers to use a strike on another potential juror.

This scenario is totally speculative. Nothing in it approaches the level of probable prejudice needed to support a finding of reversible error. The trial court complied with Iowa Rule of Civil Procedure 187(g).

### III. *Jury Instruction No. 16.*

■ The Schweitzers also argue that the trial court erred in submitting to the jury Instruction No. 16 regarding a driver's duty to signal upon stopping or suddenly decreasing speed. They do not contend that the instruction is incorrect with regard to its statement of the law; they only contend that there is insufficient evidence to support submission of the instruction to the jury.

Instruction No. 16 stated as follows:

A driver shall not stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal to the driver of any vehicle immediately to the rear when there is an opportunity to give the signal. The signal shall be given by either extending the hand and arm downward from the left side of the vehicle or by a brake light constructed and located

on the vehicle so as to give a signal of intention to stop. The brake light shall be red or yellow and shall be plainly visible and understandable in normal sunlight and at night from a distance of 100 feet to the rear. The brake light shall not project a glaring or dazzling light.

A violation of this law is negligence.

■ This instruction tracks section 321.316 of our Code. Generally, Iowa law requires that a court give a requested instruction when it states a correct rule of law having application to the facts of the case and the concept is not otherwise embodied in the other instructions. *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989); *Sanders v. Ghrist*, 421 N.W.2d 520, 522 (Iowa 1988). The test is whether there is substantial evidence to support the instruction submitted. The possibility that two inconsistent conclusions might be drawn from the same evidence does not prevent a finding from being supported by substantial evidence. *Peoples Memorial Hosp. v. Iowa Civil Rights Comm'n*, 322 N.W.2d 87, 91 (Iowa 1982). Evidence is substantial when a reasonable mind could accept it as adequate to reach a conclusion. *Dubuque Community School Dist. v. PERB*, 424 N.W.2d 427, 431 (Iowa 1988). Nonetheless, error in giving or refusing to give an instruction does not require reversal unless the error is prejudicial. *Stover*, 434 N.W.2d at 868.

In the present case, Marilyn Schweitzer testified as follows: She first observed the school bus when it was on an East approach to the bridge; she was traveling fifty-five mph when she tapped her brakes to release the cruise control; she had slowed to thirty-five or forty-five mph when she first became aware of the Nichols truck passing her on the left; she immediately applied her brakes to avoid a collision; and she stopped within a car length with one-half of the semi-trailer adjacent to her upon impact of the truck with the bus. Schweitzers point out that the witnesses agreed that their car's brake lights worked and no claim was made that

the lights failed to meet the statutory standards. They argue that there is no evidence of a "sudden decrease" of their vehicle's speed that would call for application of the statute. Further, they say if there was a sudden decrease in speed, then there was a signal from the operational brake light on their car.

Contrary to her version, two accident reconstruction experts testified that by the time Marilyn Schweitzer would have slowed under her scenario, the bus would have been 240 to 700 feet past the point of actual impact with the truck. They analyzed her testimony as to speed, compared it with the physical evidence, and concluded that Schweitzer's version of how she stopped or decreased her speed was virtually impossible. In addition, there was some conflicting testimony regarding whether she slowed or stopped to let the school bus through the bridge, or to avoid a collision between the bus and the truck. Other evidence was that her car was stopped when Nichols drove his truck around her car in an emergency pass.

■ It is well settled that the credibility of witnesses and the weight to be given their testimony is a matter peculiarly for the trier of fact. *Knight v. Anderson*, 292 N.W.2d 411, 415 (Iowa 1980).

In *McDaniel v. Stitsworth*, 224 Iowa 289, 292, 275 N.W. 572, 574 (1937), we stated the purpose of the predecessor to section 321.316 "was to require the driver of forward cars to give following cars a signal of his purpose to stop so that the drivers of such following cars might gauge their speed accordingly." The signal that is required can depend on the circumstances prevailing. *Cf. Baker v. Wolfe*, 164 N.W.2d 835, 838 (Iowa 1969) (evaluating if hand signal was required in addition to brake light signal); *Harris v. Clark*, 251 Iowa 807, 813, 103 N.W.2d 215, 218–19 (1960) (evaluating evidence of brake light given thirty or thirty-five feet before stop in sudden emergency context).

The direct and circumstantial evidence in this case, concerning Marilyn Schweitzer's course and speed on the highway moments before the accident, present questions of fact or a basis for different inferences as to whether she suddenly stopped and/or decreased her speed without giving an appropriate signal to the Nichols vehicle traveling behind her. Therefore, submission of this issue to the jury by way of Instruction No. 16 was appropriate.

### IV. *Proposed Opinion Testimony.*

■ The Schweitzers further assert that the trial court erred in not allowing Trooper Richard Kinseth to express his opinion as to whether their car was moving when the Nichols truck started to pass. The trial court excluded the proposed opinion because it thought "that the prejudicial value of this witness testifying from hearsay testimony would outweigh the probative value ..." of the evidence.

Trooper Kinseth was the principal and primary investigative officer at the scene of the accident. He testified regarding his qualifications and training, but specifically stated that he did not consider himself an accident reconstruction expert. He also never spoke to Marilyn Schweitzer or Nancy West. At trial he was allowed to testify to his findings relating to the tangible evidence observed and collected at the scene and to any conclusions he may have drawn as a result thereof, including a sequence of events pertaining to the accident. He did not, however, obtain any tangible evidence regarding the course or speed of movement of the Schweitzer vehicle prior to the accident. His proposed opinion in this regard was based solely upon statements obtained from other witnesses.

Iowa Rule of Evidence 403 states that:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or a needless presentation of cumulative evidence.

The balancing of probative value against the grounds for exclusion is for the trial court's discretion. *State v. Harmon*, 238 N.W.2d 139, 145 (Iowa 1976). The court must first determine whether the evidence

has some probative value; if it does, then the court must weigh the probative value against the policy grounds for exclusion. *Id.*

Trooper Kinseth's proposed opinion in this case, although arguably probative, was based entirely on hearsay statements. In *Miller v. Bonar,* 337 N.W.2d 523, 528 (Iowa 1983), we held that a state trooper's opinion based on his investigation of the yaw marks and skid marks on the pavement, damage done to the two vehicles, and the point at which they came to rest, was properly admissible since the testimony was not based on out-of-court statements of those involved. However, we also stated that if the investigating officer's opinion is based in part on out-of-court interviews with witnesses, it is inadmissible hearsay. *Id.* (citing *Ruby v. Easton,* 207 N.W.2d 10, 20 (Iowa 1973)).

As applied to this case, it is clear that Trooper Kinseth's opinion was strictly his weighing of the factual discrepancies in four witnesses' statements, and his conclusion as to who recalled the facts most accurately. Although Iowa employs a liberal rule that allows opinion testimony if it will aid the jury and is based on special training, experience, or knowledge with respect to the issue in question, *see* Iowa Rule of Evidence 702, Trooper Kinseth possessed no such skill superior to that of the jury that would aid in their evaluation of the testimonial evidence offered by the other witnesses.

Furthermore, because he was the first law enforcement officer to testify and the head of the law enforcement investigation of the accident, it is likely the jury would have given undue weight to his opinion, notwithstanding effective cross-examination, resulting in unfair confusion and prejudice. *See Zimmer v. Miller Trucking Co.,* 743 F.2d 601, 604 (8th Cir.1984).

The exclusion of this opinion evidence was within the trial court's discretion and we are loath to interfere unless a manifest abuse of discretion results in prejudice to the complaining party. *Renze Hybrids, Inc. v. Shell Oil Co.,* 418 N.W.2d 634, 639 (Iowa 1988); *State v. Klindt,* 389 N.W.2d

670, 672 (Iowa 1986); *State v. Dvorsky,* 322 N.W.2d 62, 64 (Iowa 1982). Since the hearsay declarants upon whose statements Trooper Kinseth's opinion was based were all allowed to testify at trial, we do not find any resulting prejudice to the Schweitzers that would require a reversal.

Our review of the assignments of error persuades us that legal error has not occurred in this case. The judgment of the trial court is affirmed.

AFFIRMED.