Bobby G. COKER and Jacqueline
Anne Coker, Appellants,

v.

ABELL–HOWE COMPANY and
Ernest Moore, Appellees.

No. 91–836.

Supreme Court of Iowa.

Sept. 23, 1992.

Rehearing Denied Oct. 23, 1992.

William G. Nicholson of White & Johnson, P.C., Cedar Rapids, for appellants.

Matthew J. Petrzelka, James M. Peters and Gilda L. Boyer of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN and SNELL, JJ.

SNELL, Justice.

This appeal by plaintiffs is from an adverse jury verdict in a negligence action. Plaintiff Bobby G. Coker was injured when struck in the head by a steel bar being used by a coworker. The jury determined that Coker was sixty-five percent at fault while defendants Abell–Howe Company and Ernest Moore, the coworker, were thirty-five percent at fault.

Plaintiffs, Bobby G. Coker and Jacqueline A. Coker, appeal from the trial court's jury instructions and the taxation of some costs to them. The Cokers raise four issues in this appeal. First, the Cokers appeal separate instructions by the trial court that Coker may be assigned a percentage of fault under Iowa Code chapter 668 (1987) on the theories of contributory negligence, unreasonable assumption of the risk of injury, and unreasonable failure to avoid an injury. Cokers also appeal the trial court determination that there was sufficient evidence to allow a jury instruction and specification that Coker failed to keep a proper lookout for his own safety. Cokers argue these instructions unduly emphasized Coker's alleged fault and are therefore prejudicial error requiring reversal. The trial court taxed the Cokers with certain depositions and expert witness expenses. The Cokers appeal these expenses. We affirm in part, reverse in part, and remand for a new trial.

I. *Background and Facts.*

On December 14, 1987, Bobby Gene Coker was employed as a semi-truck driver. That day, Coker delivered a large steel component from Miami to the ADM construction site in Cedar Rapids, Iowa. Ernest Moore was a job superintendent employed by the Abell–Howe Company on the site. When Coker arrived, Moore assembled a crew of Abell–Howe employees to unload the component from the truck to a storage facility. Abell–Howe employees Ronald Brooker, Michael Hanks, Donald Neal, and crane operator Niles Gardemann began readying the crane to lift the component.

Moore directed Coker to park his truck for unloading at the storage area. As Coker stepped out of the truck, he saw Moore unfastening the chains that secured the load to the flatbed truck. These chains were held tight around the load with "chain binders." Chain binders are tensioning devices hooked onto the chain that has previously been fastened over a load. When the chain binder is closed, the ends of the binder are drawn together, placing the chain under greater tension. A "cheater bar," a steel pipe several feet long, is used to place additional leverage to tighten and release the chain binders.

Coker saw Moore using Coker's cheater bar to release the chain binders. Coker noticed that Moore was having some diffi-

culty controlling the bar. Both Moore and Coker had used cheater bars in the past and were aware of the possible dangers. Coker testified that he approached Moore and warned him against using the cheater bar, telling Moore that, "if he were to get hit by that cheater bar, it could buy him a new lunch or more ways than one hurt him." Coker then turned his back to Moore to unhook a previously loosened chain. Moore continued to open chain binders with the cheater bar. As Moore applied the cheater bar to another binder, Moore lost control of the bar and it swung over his head and backward behind him. Coker was standing directly behind Moore and was struck in the head by the cheater bar. Moore testified that Coker made no warning and Moore had not seen Coker near him until after the blow. Coker was not wearing a helmet. Neal, the only witness to the accident, testified that he saw Coker facing the rear of the truck with his feet apart, as if walking directly behind Moore.

At trial Coker alleged that the Abell–Howe Company was negligent through the actions of its employee Moore. Abell–Howe and Moore denied negligence and affirmatively pleaded that Coker's negligence was the proximate cause of his injury. Over Coker's objections, the trial court instructed the jury on three separate theories of Coker's fault. In addition to an instruction regarding Coker's contributory negligence, Instruction No. 18 instructed the jury that Coker may be at fault if he "unreasonably failed to take action to avoid an injury," and Instruction No. 19 instructed that Coker may be at fault if he "unreasonably assumed a risk of harm from the conduct of another." Coker also objected to a separate instruction and specification that Coker failed to keep a "proper lookout," on the ground that the evidence presented at trial was insufficient to support the instruction and specification. On appeal, Coker argues that the giving of Instruction No. 18, Instruction No. 19, and the instruction and specification on proper lookout are prejudicial as placing undue emphasis on Coker's fault.

The jury found Coker to be sixty-five percent at fault for his injuries, and Abell–Howe and Moore to be thirty-five percent at fault. Pursuant to Iowa Code section 668.3, Coker was denied recovery. The trial court thereafter ruled on the taxation of costs against Coker. Regarding costs, Coker argues that the trial court erred in the taxation of expert witness fees in excess of $150 under Iowa Code section 622.72 (1991), deposition testimony expenses, and the costs of obtaining copies of transcripts of depositions taken and offered by Coker following a rejected offer to confess judgment.

## II. *Assumption of Risk.*

At trial Abell–Howe claimed Coker was at fault in causing his injuries. In addition to alleging contributory negligence, Abell–Howe argued that Coker "assumed the risk" that he may be struck by the cheater bar that Moore was using. The trial court gave a separate jury instruction that defined assumption of risk and listed factual specifications upon which the jury might find Coker had assumed the risk of injury. Coker objected at trial, claiming that under our decision in *Rosenau v. City of Estherville*, 199 N.W.2d 125 (Iowa 1972), assumption of risk is no longer a defense when the defendant also claims that the plaintiff's contributory negligence was the cause of injury.

Abell–Howe contends that our legislature's adoption of Iowa Code chapter 668, entitled Liability in Tort—Comparative Fault, reinstates assumption of risk in negligence cases after *Rosenau* was decided. Abell–Howe argues that the inclusion of assumption of risk in section 668.1, which defines fault, revives assumption of risk as a separate defense. We disagree.

We have recognized two distinct meanings of the term "assumption of risk." In its primary meaning, assumption of risk is an expression for the proposition that the defendant was not negligent, either because the defendant owed no duty or did not breach a duty. When used in its secondary meaning, assumption of risk is an affirmative defense to an established

breach of duty; the defendant contending that the plaintiff acted unreasonably in encountering a known risk. *Rosenau*, 199 N.W.2d at 131; Annotation, *Assumption of Risk—Distinctions*, 82 A.L.R.2d 1218, 1237–41 (1962). In this case, Abell–Howe invokes the secondary meaning, claiming that Coker acted unreasonably in approaching Moore while Moore used the cheater bar.

Before our decision in *Rosenau*, the affirmative defense of assumption of risk in negligence cases resulted in confusion and repetition in our tort law. When both contributory negligence and assumption of risk were pleaded, a jury could find that the plaintiff acted with the care of a reasonably prudent person under all of the circumstances, yet could deny recovery because the plaintiff "assumed the risk." *Rosenau*, 199 N.W.2d at 132. Additionally, the defense of contributory negligence and assumption of risk involve the same elements and facts, an overlapping that resulted in "duplicitous instructions on a single aspect of the case." *Id.* at 133.

For these reasons, we abolished assumption of risk in its secondary meaning as a separate defense in cases in which the defendant could also allege contributory negligence. Assumption of risk as a defense was maintained in those cases in which contributory negligence was not available, such as strict liability.

We adopted comparative negligence in *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1982). We then examined whether assumption of risk would be revived as a defense under *Goetzman* comparative negligence. We held that it was not in *Campbell v. Van Roekel*, 347 N.W.2d 406, 410 (Iowa 1984) ("[w]e do not believe that the change in the contributory negligence defense in *Goetzman* should affect the holding in *Rosenau* eliminating assumption of risk in its secondary meaning in negligence cases.").

In 1984, the Iowa legislature adopted Iowa Code chapter 668, establishing a modified comparative fault system. The legislature used the term "fault" to encompass the available claims and defenses in negli-gence and strict liability actions. Section 668.1, fault defined, states:

1. As used in this chapter, "fault" means one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

■ Abell–Howe contends that the passage of the Iowa Comparative Fault Act restores assumption of risk as a separate defense in negligence cases. Abell–Howe points to the language of section 668.1, which specifically includes assumption of risk in the definition of fault, then proceeds to argue that assumption of risk applies to all fault cases, whether negligence or strict liability.

■ After *Rosenau*, assumption of risk remains a defense in those actions in which contributory negligence is not available, such as common-law strict liability. In these cases, there is no danger of duplicitous theories and instructions, so a defendant is free to plead and argue that the plaintiff unreasonably encountered and assumed a known risk created by the defendant's negligence. *See Hawkeye Sec. Ins. Co. v. Ford Motor Co.*, 199 N.W.2d 373, 381 (Iowa 1972).

Section 668.1(1), modeled from the Uniform Comparative Fault Act, includes common-law strict tort liability actions among cases to be tried under the comparative fault system. We assume the legislature was aware that assumption of risk was not a defense in actions in which contributory negligence could be pleaded yet was available in strict liability actions. It was appropriate for the legislature to include assumption of risk among the elements to be considered under comparative fault, as "fault" includes strict liability. As we stated in *Slager v. H.W.A. Corp.*:

We think assumption of risk is included as fault in our comparative fault statute because there is at least one common-law theory of action included to which the defense has application. That theory is strict tort liability in products liability cases.

435 N.W.2d 349, 355 (Iowa 1989) (dictum). The inclusion of assumption of risk in our comparative fault statute does not mandate that the defense be restored in negligence cases, returning tort law to the confusion and repetition that prompted *Rosenau*. Rather, the legislature included assumption of risk as a defense to strict liability actions covered by Iowa Code chapter 668.

We hold that assumption of risk may not be pleaded or instructed upon as a separate defense in cases in which contributory negligence is an available defense under the Iowa Comparative Fault Act, Iowa Code ch. 668. Our decision in *Rosenau* remains intact following passage of the act. The trial court erred in instructing the jury on both Coker's negligence and his assumption of risk.

■ Error in giving or refusing to give a particular instruction does not warrant reversal unless the error is prejudicial. *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 685 (Iowa 1990). In *Rosenau*, discussing the defendant's request for both contributory negligence and assumption of risk instructions, we stated:

> We have recognized that instructions should not give undue emphasis to any phase of the case favorable to either side, and even correct statements of the law, if repeated to the point of undue emphasis, may constitute reversible error.

199 N.W.2d at 133. It follows that the trial court's giving of both instructions unduly emphasized Coker's allegedly negligent acts and is therefore prejudicial error.

### III. *Unreasonable Failure to Avoid Injury.*

Coker claims second error in the trial court's giving of Instruction No. 18. This instruction informed the jury that Coker was under a duty to exercise reasonable care for his own safety by taking action to avoid injury. Coker contends that this instruction does nothing more than restate the general duty to exercise ordinary care, and that "unreasonable failure to avoid injury" is merely specific conduct for which a jury might find Coker contributorily negligent. Abell–Howe argues that Instruction No. 18 embodies the doctrine of avoidable consequences expressly adopted by the Iowa legislature in the Iowa Comparative Fault Act, § 668.1. We agree with the defendant that the phrase "unreasonable failure to avoid an injury" incorporates the doctrine of avoidable consequences in our comparative fault scheme, but we find this doctrine inapplicable to the facts in this case.

Instruction No. 18 tracks verbatim Iowa Uniform Civil Jury Instruction 400.8—Unreasonable Failure to Avoid an Injury—Defined. It states:

> A party is required to exercise reasonable care for their own safety. This means that if, in the exercise of ordinary care under the circumstances, a party could have taken some particular action to avoid an injury, then they are under a duty to take such action.

The drafters of the uniform instructions cite only Iowa Code section 668.1 of the comparative fault chapter and *Rinkleff v. Knox*, 375 N.W.2d 262 (Iowa 1985), as authority for Iowa Uniform Civil Jury Instruction 400.8.

■ The Iowa Comparative Fault Act is modeled largely after the Uniform Comparative Fault Act. The language of Iowa Code section 668.1, which defines fault, is taken directly from the Uniform Act. The term "fault" includes "unreasonable failure to avoid an injury or to mitigate damages." Iowa Code § 668.1(1), Uniform Comparative Fault Act § 1(b), 12 U.L.A. 44 (Supp.1992). The official comments to the Uniform Act have some persuasive influence in determining what our legislature intended by the language in our comparative fault act. *Slager*, 435 N.W.2d at 352 (examining official comments of Uniform Act to determine whether dramshop actions are included under Iowa Comparative Fault

Act). The official comment to section one of the Uniform Act, referring to the phrase "unreasonable failure to avoid an injury or mitigate damages," states "the doctrine of avoidable consequences is expressly included in the coverage [of the definition of fault]." 12 U.L.A. 44, 45 (Supp.1992).

 The avoidable consequences doctrine is that a party cannot recover damages that result from consequences which that party could reasonably have avoided. *See* 22 Am.Jur.2d *Damages* § 495, at 579 (1988); Restatement (Second) of Torts § 918(1) (1977). Like contributory negligence, avoidable consequences is the review of the reasonableness of the plaintiff's conduct as a defense in a negligence action. Both doctrines examine the plaintiff's duty to care for his own interests and require the plaintiff to exercise only the standard of care of the reasonable person under the circumstances. Yet, contributory negligence and avoidable consequences are distinct:

> [C]ontributory negligence is negligence of the plaintiff before any damage, or any invasion of his rights, has occurred.... The rule of avoidable consequences comes into play after a legal wrong has occurred, but while some damage may still be averted, and bars recovery only for such damages.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 65, at 458 (5th ed. 1984). The difference between the two theories is time related. A plaintiff is contributorily negligent when unreasonable behavior before or simultaneous with that of the defendant is a contributing cause of his injuries. Avoidable consequences, on the other hand, occur after the defendant's negligence, but before an injury results. The avoidable consequences doctrine is akin to mitigation of damages when the plaintiff must attempt to reduce damages after the injury has occurred. *See R.E.T. Corp. v. Frank Paxton Co.*, 329 N.W.2d 416, 419–22 (Iowa 1983).

The facts of *Rinkleff*, 375 N.W.2d at 263–64, cited by the drafters of the Iowa Uniform Civil Jury Instructions, illustrate this distinction. In *Rinkleff*, the plaintiff rented scaffolding to be used to paint the walls of an automobile warehouse. In assembling the scaffolding, the plaintiff discovered that both the cross braces of the scaffolding were the wrong length and no casters had been furnished for the legs of the end frames. The plaintiff proceeded to assemble and use the scaffolding despite its defects. After the plaintiff fell from the scaffolding and sustained a broken wrist, he brought suit against the renter of the scaffolding equipment. The defendant rental company alleged that the plaintiff was negligent in failing to inspect the equipment prior to using it. The plaintiff requested that the trial court instruct the jury that he had no duty of inspection before using the scaffolding. We held that the trial court properly refused the requested instruction. *Rinkleff*, 375 N.W.2d at 265–66. Although in *Rinkleff* we made no formal distinction between contributory negligence and avoidable consequences, we recognized that the plaintiff had a duty to exercise reasonable care to avoid harm to himself, even though the defendant's negligence had already occurred, to wit, supplying defective scaffolding. *Rinkleff*, 375 N.W.2d at 265.

In the present case, all of Coker's acts or omissions alleged by Abell–Howe to be negligent occurred prior to or simultaneous with the defendant's negligence. Abell–Howe alleges nothing that Coker should have done after he approached Moore and Moore struck him that could have avoided his injury. The factual specifications listed in the jury instructions for Coker's unreasonable failure to avoid injury illustrate that Coker and Moore acted simultaneously: "failing to maintain a lookout by approaching Ernest Moore from behind while the latter was unfastening the chain binder"; "failing to protect himself from a known danger involved with the use of a cheater bar"; and "failing to have proper protective equipment while being involved in a dangerous activity." These are merely specifications for Coker's alleged contributory negligence, and are not "unreasonable failure to avoid injury" under the avoidable consequences doctrine.

We hold that the Iowa legislature adopted the avoidable consequences doctrine as an element of fault in Iowa Code section 668.1. A separate instruction on "an unreasonable failure to avoid an injury" may be warranted in those cases in which the plaintiff could have acted to avoid injury after the defendant's alleged negligence occurred. When appropriate under the facts, Iowa Uniform Civil Jury Instruction 400.8 should advise the jury that it applies only to the plaintiff's alleged fault occurring in time after the act of fault alleged against the defendant. In cases in which the plaintiff's failure to avoid injury occurs prior to or simultaneous with the defendant's negligent acts or omissions, the allegation is nothing more than contributory negligence, and a negligence instruction is all that is required. The trial court erred in giving Instruction No. 18 regarding unreasonable failure to avoid injury.

## IV. *Proper Lookout.*

Coker argues that the trial court erred in submitting to the jury an instruction and specification regarding Coker's alleged failure to maintain a "proper lookout." Coker's argument is not that the instruction incorrectly states the law or his duty, but that there is insufficient evidence to support submission to the jury. We find that there is sufficient evidence to support a jury finding that Coker failed to look out for his own safety. Therefore, on remand, the trial court may include the general instruction on lookout and the lookout specification in the instruction on Coker's alleged contributory negligence.

At trial Coker objected to the trial court's giving of Instruction No. 22 regarding "proper lookout." The instruction stated:

By "proper lookout" is meant that lookout which would be maintained by an ordinarily reasonable and prudent person under the same or similar circumstances. "Proper lookout" means more than merely to look straight ahead, or more than seeing the object. It implies being watchful of the movements of one's self in relation to the things seen and which

could have been seen in the exercise of ordinary care.

An individual specification was also given in Instruction Nos. 17, 18, and 19, which stated that Coker may be found at fault for "failing to maintain a lookout by approaching Ernest Moore from behind while the latter was unfastening the chain binder."

Generally, Iowa law requires that a court give an instruction when it states a correct rule of law having application to the facts of the case and the concept is not otherwise embodied in other instructions. *Nichols v. Schweitzer*, 472 N.W.2d 266, 274 (Iowa 1991); *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989). There must be substantial evidence in the record to support the instruction submitted. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Nichols*, 472 N.W.2d at 274; *Dubuque Community Sch. Dist. v. PERB*, 424 N.W.2d 427, 431 (Iowa 1988). In weighing the sufficiency of evidence, we give it the most favorable construction it will bear in favor of the party seeking submission. *Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 107–08 (Iowa 1986); *Franken v. City of Sioux Center*, 272 N.W.2d 422, 428 (Iowa 1978).

In the present case, Coker testified that he stepped down from his truck and noticed Moore releasing the chains, using the cheater bar with considerable difficulty. Coker stated that he warned Moore of the danger of injury if the cheater bar were to hit Moore. Coker then turned around to unhook a released chain. While turned away, Moore attempted to release another chain and lost control of the cheater bar, which struck Coker. Donald Neal testified that he saw Coker directly behind Moore, near Moore, facing toward the back of the truck as if walking in that direction. Ernest Moore testified that he did not know where Coker was standing at any time before the strike and that Coker did not approach him, speak to him, nor warn him of the danger of the cheater bar.

Viewing the evidence presented in the light most favorable to the party moving for submission of the instruction, we find that there is sufficient evidence from which a reasonable mind could conclude that Coker failed to keep a proper lookout. Therefore, the trial court properly submitted to the jury Instruction No. 22 regarding proper lookout.

 The purpose of requiring the jury to consider factual specifications is to limit the determination of facts or questions arising in negligence claims to only those acts or omissions upon which the court has had an opportunity to make a preliminary determination of the sufficiency of the evidence to generate a jury question. *Diehl v. Diehl*, 421 N.W.2d 884, 887 (Iowa 1988). Each specification should identify either a certain thing the allegedly negligent party did which that party should not have done, or a certain thing that party omitted that should have been done, under the legal theory of negligence that is applicable. *Id.* at 887. Maintaining a proper lookout encompasses the duty to be careful of the movements of one's self in relation to things seen and that could have been discerned or seen in the exercise of care. *Diehl*, 421 N.W.2d at 887 (evidence presented sufficient to support submission of instruction that injured automobile driver negligently failed to keep proper lookout). *Matsuka v. Bryant*, 260 Iowa 726, 735–36, 150 N.W.2d 716, 722 (1967). The lookout specification was properly submitted to the jury as the basis for finding Coker acted negligently. The specification in Instruction No. 17 is affirmed.

### V. *Costs.*

 In an order following trial, the trial court taxed certain costs against the Cokers to which they appeal. Court costs are taxable only to the extent provided by statute. *Schark v. Gorski*, 421 N.W.2d 527, 528 (Iowa 1988). Because costs were not recoverable at common law, statutes providing for their recovery are strictly construed. *Id.*

 First, the trial court taxed as costs against the Cokers the expert witness fees for four doctors. Expert deposition fees for plaintiffs' two doctors were $500 and $400. Each of the defendants' two doctors were awarded $500 for their trial testimony. In *Meyer v. City of Des Moines*, 475 N.W.2d 181, 191–92 (Iowa 1991), we held that experts testifying at trial are entitled to an ordinary witness fee of ten dollars a day and their mileage pursuant to Iowa Code section 622.69 (1991), and an additional expert fee not to exceed $150 pursuant to Iowa Code section 622.72. Experts giving deposition testimony are entitled only to the $150 fee. Taxation of costs for the doctors in excess of this amount was error.

Second, the trial court taxed the Cokers with the costs of four depositions taken in 1990, pursuant to Iowa Code section 625.14 (1991) and Iowa Rule of Civil Procedure 157(a). This rule provides:

> Costs of taking and proceeding to procure a deposition shall be advanced by the party taking it, and he cannot use it in evidence until such costs are paid. The costs shall be noted in the return or certificate, and taxed by the clerk. The judgment shall award against the losing party only such portion of these costs as were necessarily incurred for testimony offered and admitted upon the trial.

The question here is whether the 1990 depositions were "necessarily incurred for testimony offered and admitted upon the trial."

 A trial court's determinations under rule 157(a) involve an exercise of discretion and therefore will be reversed upon only a finding of abuse of discretion. *Woody v. Machin*, 380 N.W.2d 727, 730 (Iowa 1986); *Vorthman v. Keith E. Meyers Enters.*, 296 N.W.2d 772, 779 (Iowa 1980). The necessity standard is met when depositions are "introduced into evidence in whole or in part at trial." *Woody*, 380 N.W.2d at 730. In *Woody*, the party seeking to recoup deposition costs argued that the depositions, though not introduced at trial, were "essential to their preparation for expert testimony at trial" and should therefore be taxed to the opposing party. We held the trial court properly denied the costs. *Id.*

Abell–Howe argues that three of the 1990 depositions were offered and admitted at trial. These 1990 depositions were used as preparation for and mentioned in later video depositions taken in 1991, which were admitted in whole and shown at trial. The fourth deposition was mentioned once during cross-examination of that witness during live testimony at trial. One danger of adopting Abell–Howe's interpretation of "offered and admitted at trial" is that a party may transfer all of its costs for numerous and lengthy depositions to the losing party merely by mentioning the depositions at trial. *See Woody,* 380 N.W.2d at 731–32 (Uhlenhopp, J., concurring specially).

The current federal standard for the taxation of costs relating to the taking of depositions is that deposition costs may be taxed when the court finds all or any part of a deposition was "necessarily obtained for use in the case." *See Nissho–Iwai Co. v. Occidental Crude Sales,* 729 F.2d 1530, 1553 (5th Cir.1984) (costs allowed when depositions were used by counsel to structure questions of witnesses). However, even under the federal standard, merely preparatory depositions are typically not taxable. *See* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2676, at 345 (2d ed. 1983) ("The cost of depositions that simply are investigative or preparatory in character, rather than for presentation of the case, typically are not taxable."). We read our standard under rule 157(a) to be more narrow than the federal standard. *See Schark,* 421 N.W.2d at 528.

■ Applying these principles, we hold that preliminary depositions that have been "bootstrapped" into the record through testimony or subsequent video depositions used at trial may not be taxed against the losing party.

Third, Cokers appeal the taxation of costs for copies of deposition transcripts taken after a rejected offer to confess judgment. On January 9, 1991, Abell–Howe tendered an offer to confess judgment of $100,000 to the Cokers. The offer, made after the action was brought and before commencement of the trial, is governed by Iowa Code sections 677.7 through 677.10 (1991). *See Sheer Constr. Inc. v. W. Hodgman & Sons, Inc.,* 326 N.W.2d 328, 333 (1982) (distinguishing the four methods of offering to confess judgment under Iowa Code chapter 677). Iowa Code section 677.10 states, "if the plaintiff fails to obtain judgment for more than was offered by the defendant, the plaintiff cannot recover costs, but shall pay defendant's costs from the time of the offer." The Cokers rejected the offer. At trial, the jury found Bobby G. Coker sixty-five percent at fault for his injury, and he was denied recovery.

In its order for the taxation of costs, the trial court charged the Cokers with the cost of transcript copies of eight depositions of plaintiffs' witnesses. Seven transcript copies were taken from video depositions that Coker submitted into evidence at trial; the eighth transcript was a copy of an oral deposition that was not admitted into evidence. The copies were made after the offer to confess judgment was rejected and were used by Abell–Howe to prepare for trial.

Abell–Howe argues that copies of these transcripts are incidental to the taking of a deposition for which costs are allowed when the deposition is offered in whole or in part at trial. *See* Iowa Code § 625.14; Iowa R.Civ.P. 157(a); *Woody,* 380 N.W.2d at 730. Abell–Howe would have us read "costs" broadly under chapter 677. Abell–Howe seeks to have the losing plaintiff bear the cost of its copies, made after a rejected *offer to confess,* arguing that the word "costs" in section 677.10 includes expenditures not otherwise taxable as costs.

■ We think "costs" should be read no more broadly in chapter 677 than it has been read in our other statutes and rules regarding costs. In construing a statute, this court strives to give effect to the intention of the legislature in enacting the statute. *State v. Gorman,* 464 N.W.2d 122, 123 (Iowa 1990). The court may not extend, enlarge or otherwise change the terms of a statute. *State v. Jones,* 464 N.W.2d 241, 242 (Iowa 1990).

Chapter 677 is designed to encourage the settlement of disputes and discourage unnecessary and costly litigation, and this statute should be given liberal construction to serve those purposes. *Weaver Constr. Co. v. Heitland,* 348 N.W.2d 230, 232 (Iowa 1984). An offer to confess judgment pressures the plaintiff to accept a defendant's settlement offer because even a successful plaintiff at trial will be responsible for costs if he fails to recover damages in excess of a rejected offer. This powerful tool need not be made stronger by expanding which costs will be allowable in the context of a confession of judgment.

For its proposition that Coker should pay "the cost of the trial," Abell–Howe cites *Sheer Construction,* 326 N.W.2d at 333, in which this court said the plaintiff's penalty for rejection of an offer to confess judgment was "the cost of the trial." Abell–Howe's reliance is misplaced. In *Sheer Construction,* the defendant offered to confess judgment pursuant to Iowa Code section 677.4, in which the defendant makes his offer in court at the commencement of the trial itself. If the plaintiff rejects the offer and fails to recover more at trial, then the plaintiff is chargeable with costs incurred after the offer. Under section 677.4, when the offer is made at trial, the costs are literally the costs incurred during the trial, and would not include any discovery expenses before trial, as Abell–Howe would have us believe.

Copies of transcripts of depositions, when the transcripts are not admitted into evidence, are routine litigation expenses incurred in preparing for trial. "Allowable costs are limited to the cost of the original of depositions and do not include the expense of duplicate copies obtained for convenience of counsel." *Turner v. Willis,* 59 Haw. 319, 333, 582 P.2d 710, 719 (1978) (citing *Erving Paper Mills v. Hudson–Sharp Machine Co.,* 271 F.Supp. 1017, 1023 (E.D.Wis.1967)). The expenses incurred by Abell–Howe in obtaining transcript copies of depositions are not an allowable cost under section 677.10.

We affirm in part, reverse in part, and remand for a new trial.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR A NEW TRIAL.