# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2698

_____

Judith Wurster, individually and as its administrator executor The Estate of James Wurster

*Plaintiff - Appellant*

v.

The Plastics Group, Inc., doing business as Wedco, doing business as Wedco Moulded Products Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: December 11, 2018
Filed: February 25, 2019

_____

Before LOKEN, MELLOY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

James Wurster ("Mr. Wurster") suffered fatal burns when a gas can manufactured by Appellee The Plastics Group, Inc. ("TPG") exploded as he was burning garbage on his farm in Iowa. His wife, Judith Wurster ("Mrs. Wurster"), filed suit, both in her personal capacity and in representative capacity for the estate and heirs-at-law, against TPG. After trial, a jury rendered a take-nothing verdict

under Iowa's comparative fault scheme, finding TPG forty-five percent at fault for Mr. Wurster's death due to its failure to provide adequate warnings on the gas can and apportioning the balance of the fault to Mr. Wurster. See Iowa Code § 668.3(1). Mrs. Wurster appeals, asserting the district court[1] erred by (1) refusing to give her proposed design defect instruction; (2) instructing the jury on reasonable alternative design; (3) including two separate assumption of risk instructions; and (4) granting judgment as a matter of law on her post-sale failure-to-warn claim. We affirm.

## I.    Background

In the late morning of February 8, 2013, Mr. Wurster stood in the backyard of his farmhouse in Lenox, Iowa, attempting to burn some trash in a burn barrel. As a fire or embers burned inside the barrel, Mr. Wurster poured gasoline from a gas can into the barrel. This caused a flame to travel up the stream of gasoline into the can. Vapors inside the can ignited, and the can exploded.

When Mrs. Wurster heard the explosion, she rushed outside to see her husband on fire, running toward her, and pleading for help. By the time they were able to extinguish the fire, it had burned most of Mr. Wurster's clothing and skin. Despite his injuries, Mr. Wurster was lucid and coherent. He let a responding officer inside the farmhouse and told the officer "he had been in the process of starting a fire to burn some scraps around the yard area there and a gas can exploded and that's what caused the injuries."

Mr. Wurster was rushed by helicopter to a hospital in Iowa City. When Mrs. Wurster arrived at the hospital, she was told that her husband's injuries were fatal, would inevitably lead to systemic organ failure, and that the only care that medical

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

staff could provide was to keep Mr. Wurster as comfortable as possible. Mr. Wurster died the next day with his wife and some of his children by his side.

The gas can used by Mr. Wurster was a Model W520 can that TPG manufactured in November 2000 under the brand name Wedco. It is unknown when and where the Wursters purchased the can. Embossed on one side of the can was a warning:

**GASOLINE**
**DANGER – FLAMMABLE**
**EXTREMELY FLAMMABLE – VAPORS CAN EXPLODE**

. . .

**CAUTION:** . . . **VAPORS CAN BE IGNITED BY A SPARK**
**OR FLAME SOURCE MANY FEET AWAY – KEEP AWAY**
**FROM FLAME** . . . **AND OTHER SOURCES OF IGNITION –**
**KEEP CONTAINER CLOSED**

The can had a removable front pouring nozzle that contained a debris screen. The debris screen functioned as a flame arrester. A flame arrester is a mesh screen that allows air and liquid—but not sparks and flames—to pass through. The can had a vent hole in the back that was not protected by a mesh screen. The experts who testified at trial did not agree on whether Mr. Wurster had poured gas out of the main hole of the can after removing the nozzle or out of the rear vent hole.

The possibility of fire while using a gas can has been known for over a century, and efforts to avoid such fires by use of a flame arrester can design date to at least a patent in 1871. Safety organizations and Consumer Reports have urged the industry to take precautions to protect against explosions caused by the lack of a flame arrester since the 1970s. By the time the can in question was manufactured, many of TPG's competitors were manufacturing cans that included flame arresters. TPG could have

added a basket-type flame arrester to its gas cans for as little as five to ten cents per can.

TPG acknowledged at trial that while it was aware of the possibility that explosions could be caused by the lack of flame arresters by at least 2006, it provided no post-sale warnings to previous purchasers of its cans. They did, however, change the warning label on newly manufactured cans. A TPG representative explained the company does not make retail sales of its products and had no way of identifying where Mr. Wurster purchased the can or whether he was the original purchaser. While TPG was aware of which big box retailers it sold its products to, it had no way of knowing which particular stores sold the W520 gas can.

This appeal focuses primarily on the court's jury instructions. The case was tried to a jury on a negligence theory, with the jury being instructed on two specifications of negligence requested by Mrs. Wurster. Instruction No. 12 stated that in order to prevail on the negligence claim, Mrs. Wurster must prove TPG was negligent in (1) its "design of its gas cans" and/or (2) its "failure to provide adequate gas can warnings."

Instruction Nos. 13 and 18 are the assumption of risk instructions at issue in this appeal. Instruction No. 13 read:

> TPG claims that James Wurster was at fault by being negligent. In order to prove this claim, it must prove
>
> > 1. James Wurster was negligent in one or more of the following ways:
> >
> > > a. misuse of the gas can by attempting to pour gasoline on a fire;

b. misuse of the gas can by attempting to pour gasoline from the vent hole; and

c. unreasonable assumption of the risk.

2. James Wurster's fault was a cause of plaintiffs' damage.

If TPG failed to prove either of these propositions, TPG has not proved its defense. If TPG has proved both of these propositions, then you will assign a percentage of fault against James Wurster and include his fault in the total percentage of fault found by you in answering the special verdicts.

Instruction No. 18 read:

TPG claims that James Wurster unreasonably assumed the risk by pouring gasoline onto the fire or using the vent hole to pour gasoline.

To prove this defense, TPG must prove all of the following propositions:

1. James Wurster knew the risk was present.

2. James Wurster understood the nature of the risk to himself.

3. Nevertheless, James Wurster unreasonably, freely, and voluntarily took the risk.

4. James Wurster's assumption of the risk was a cause of plaintiffs' damage.

If TPG has failed to prove any of these propositions, it has not proved this defense. If TPG has proved all these propositions, then you will assign a percentage of fault against James Wurster and include it in the total percentage of fault, if any, found by you in your answers to the special verdicts.

Mrs. Wurster objected unsuccessfully to submitting assumption of risk both as a negligence factor in the comparative fault instruction and as a separate instruction.

Mrs. Wurster proposed a jury instruction based upon Iowa Civil Jury Instruction 1000.2, which is titled "Design Defect - Essentials for Recovery." At the instructions conference, the court proposed a modified version of Mrs. Wurster's proposed instruction as Jury Instruction No. 14. The court's proposed instruction was substantially similar to Mrs. Wurster's except for its mention of strict products liability in the preamble:

> Plaintiffs claim TPG was at fault under a theory of strict products liability. In order to prove a claim of design defect, they must prove all of the following propositions:
>
> 1. TPG manufactured the gas can,
>
> 2. TPG was engaged in the business of manufacturing gas cans,
>
> 3. The gas can did not comply with the state of the art at the time of its manufacture,
>
> 4. The gas can was in a defective condition at the time it left TPG's control, in that it lacked flame arrestors on all openings.
>
> 5. A reasonable alternative safer design could have been practically adopted at the time of sale or distribution.
>
> 6. The alternative design would have reduced or avoided the foreseeable risks of harm posed by the gas can.
>
> 7. The omission of the alternative design renders the gas can not reasonably safe.

8. The alternative design would have reduced or prevented plaintiffs' harm.

[9]. The amount of damage.

If plaintiffs failed to prove any of these propositions, they are not entitled to damages on this theory of recovery. If plaintiffs have proved all of these propositions, then you will consider the defense of comparative fault.

Counsel for TPG objected to the mention of strict products liability, arguing defective design under Iowa law is a negligence concept, and suggested the words "strict products liability" be replaced with "defective design." When Mrs. Wurster's counsel insisted the "instruction is not a negligence instruction, and it would be error to give it if the court is not giving a strict products liability instruction," the court decided not to give Jury Instruction No. 14.

Both parties proposed a reasonable alternative design instruction based on Iowa Civil Jury Instruction 1000.4, which is the counterpart to—and specifically references—Iowa Civil Jury Instruction 1000.2. During the instructions conference, Mrs. Wurster's attorney argued the court could not give Instruction No. 15—the court's modified version of her proposed reasonable alternative design instruction—if it did not also give Instruction No. 14. The court overruled the objection, responding "15 is needed for the question of design negligence." Instruction No. 15 instructed the jury to consider a list of several factors "to determine whether an alternative design is reasonable and whether its omission renders the gas can not reasonably safe."

At the conclusion of the evidence, the court granted TPG's motion for judgment as a matter of law on Mrs. Wurster's post-sale failure-to-warn claim. On April 12, 2017, the jury returned a special verdict, finding TPG did not sell a defectively designed gas can but TPG did fail to provide adequate warnings on the

gas can. The jury determined TPG was forty-five percent at fault for Mr. Wurster's injuries and Mr. Wurster was fifty-five percent at fault. Pursuant to the Iowa Comparative Fault Act, judgment was entered for TPG.[2] The court denied Mrs. Wurster's motion for a new trial.

## II.    Discussion

### A.    Jury Instructions

Mrs. Wurster asserts the district court's jury instructions erroneously emphasized Mr. Wurster's alleged fault and failed to present what she perceives to be her primary claim. We review for abuse of discretion a court's jury instructions. Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir. 2002). The district court has broad discretion in formulating jury instructions. Id. (quoting B&B Hardware, Inc. v. Hargis Indus., 252 F.3d 1010, 1012 (8th Cir. 2001)). The instructions "taken as a whole" must "fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Id. (quoting Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir. 2001)). We have noted that jury instructions need not be "technically perfect or even a model of clarity." Id. (quoting B&B Hardware, 252 F.3d at 1012). When reviewing a district court's refusal to adopt a proposed instruction, we consider a three-part test: "the proposed instruction must (1) correctly state the applicable law; (2) address matters not adequately covered by the charge; and (3) involve a point 'so important that failure to give the instruction seriously impaired the party's ability to present an effective case.'" Cox v. Dubuque Bank & Tr. Co., 163 F.3d 492, 496 (8th Cir. 1998) (quoting Thomlison v. City of Omaha, 63 F.3d 786, 791 (8th Cir. 1995)).

---

[2]Iowa Code § 668.3(1) states, "Contributory fault shall not bar recovery . . . unless the claimant bears a greater percentage of fault than the combined percentage of fault attributed to the defendants, . . . but any damages allowed shall be diminished in proportion to the amount of fault attributable to the claimant."

### i.    Design Defect Instruction

Mrs. Wurster first contends the district court committed reversible error by failing to provide a design defect instruction based on Iowa Civil Jury Instruction No. 1000.2.  She asserts the court should have given either her proposed instruction or the court's proposed Instruction No. 14.  Under Iowa law, Mrs. Wurster was not entitled to submit both a negligence claim and a strict liability claim to the jury based on the same design defect.  The Iowa Supreme Court has held that "a court should not submit both a negligence claim and a strict liability claim based on the same design defect since both claims rest on an identical risk-utility evaluation."  Wright v. Brooke Grp. Ltd., 652 N.W.2d 159, 169 (Iowa 2002) (citation omitted).[3]  The Iowa Supreme Court has also held that design defect claims are not strict liability claims. Scott v. Dutton-Lainson Co., 774 N.W.2d 501, 505 (Iowa 2009).  See also Wright, 652 N.W.2d at 168 ("The Products Restatement demonstrates a recognition that strict liability is appropriate in manufacturing defect cases, but negligence principles are more suitable for other defective product cases.").  The court properly declined to give Instruction No. 14 because the proposed instruction as drafted was inconsistent with Iowa law.

Mrs. Wurster's claim that she was denied the opportunity to present her design defect claim is equally unavailing.  While an instruction based on Iowa Civil Jury Instruction 1000.2 might have set forth the design defect claim more clearly than the

---

[3]Mrs. Wurster argues our decision in McGuire v. Davidson Mfg. Corp., 398 F.3d 1005 (8th Cir. 2005), allows a plaintiff, post-Wright, to bring both claims. McGuire is inapposite. In McGuire, whether a plaintiff can bring both a product defect claim and negligence claim for the same defect was not before the court. Instead, under plain-error review, we concluded that while conformance with the state of the art is a complete defense under Iowa law to product-defect claims, the Iowa Supreme Court "would likely find that proof of the state-of-the-art defense does not automatically exonerate a defendant from liability for general negligence." Id. at 1010.

court's final instructions did, the claim and its elements were presented to the jury in the court's instructions. Instruction No. 12 included design defect as one of two specifications of negligence and explained that TPG's negligence must have been a cause of Mr. Wurster's injuries. Instruction No. 11 instructed that negligence is the "failure to use ordinary care . . . which a reasonably careful person would use under similar circumstances." Instruction No. 15 provided a list of factors to guide the jury's consideration of negligent design, which involved a determination of "whether an alternative design [was] reasonable and whether its omission render[ed] the gas can not reasonably safe" based on "the foreseeable risks of harm." Looking to the instructions as a whole, as we must, Mrs. Wurster's design defect claim was sufficiently presented to the jury. The court did not abuse its discretion.

## ii.     Reasonable Alternative  Design Instruction

Mrs. Wurster next argues the district court erred when it instructed the jury on reasonable alternative design in Instruction No. 15 despite declining to give Instruction No. 14 or her proposed design defect instruction. Instruction No. 15 was based on Iowa Civil Jury Instruction No. 1000.4, which Mrs. Wurster—citing no authority—asserts cannot be given without Iowa Civil Jury Instruction No. 1000.2. To the contrary, "[i]n the exercise of [a court's] broad discretion [in forming jury instructions], state-mandated instruction forms may be given in their entirety or mixed with other instructions that the district judge feels are appropriate." Chohlis v. Cessna Aircraft Co., 760 F.2d 901, 904 (8th Cir. 1985).

Mrs. Wurster also argues that by "giving Instruction No. 15 without its partner instruction, the court created chaos in the instructions" and told the jury "what factors to consider when deciding an issue that the instructions never presented to the jury to decide." We disagree. The court instructed the jury on design defect based on a negligence theory in Instruction No. 12. Instruction No. 15 pertained to whether TPG acted reasonably by not using an alternative design for its gas cans. The instruction

-10-

was necessary to provide the jury with the proper factors for conducting the risk-utility test required for design defect claims. The court did not err by instructing the jury on reasonable alternative design.

### iii.    Assumption of Risk Instructions

Mrs. Wurster's final challenge to the jury instructions involves the district court's inclusion of assumption of risk as both a species of fault in the comparative fault instruction and as a separate instruction. Mrs. Wurster argues the instructions unduly emphasized her husband's alleged fault and violated the Iowa Supreme Court's decision in Coker v. Abell-Howe Co., 491 N.W.2d 143 (Iowa 1992), in which the court held "assumption of risk may not be pleaded or instructed upon as a separate defense in cases in which contributory negligence is an available defense under the Iowa Comparative Fault Act . . ." Id. at 148.

Here, the district court instructed the jury in a manner somewhat inconsistent with Coker. The court included assumption of risk as a species of fault in Instruction No. 13, identifying assumption of risk as one of three ways in which Mr. Wurster was allegedly negligent. The instruction further directed the jury to assign fault against Mr. Wurster if the evidence established the unreasonable assumption of risk caused his injuries. The district court then gave a separate assumption of risk instruction in Instruction No. 18. The instruction stated, "TPG claims that [Mr.] Wurster unreasonably assumed the risk by pouring gasoline onto the fire or using the vent hole to pour gasoline. To prove this defense, TPG must prove all of the following propositions." The instruction listed the four elements of assumption of risk and then instructed the jury, "If TPG has failed to prove any of these propositions, it has not proved this defense." The instruction's use of the phrase "this defense" appears at first blush to present the assumption of risk doctrine as both a species of fault and a separate defense.

-11-

This view fails, however, to take into account the final director, which simply directs the jury to apportion such fault as may have been caused by the unreasonable assumption of risk. In context, the instruction is simply a definition setting forth the elements of an unreasonable assumption of risk. The inclusion of the phrase "this defense," while unfortunate, does not direct the jury to do anything other than what it was directed to do in Instruction No. 13. The instruction provided a necessary definition of assumption of risk that was otherwise absent from the jury instructions.

While the instructions are no model of clarity, our review of the record demonstrates no prejudice. During closing argument, Mrs. Wurster's counsel argued to the jury that there was no doubt about the facts and there was no doubt the fixes were easy. Counsel told the jurors that looking at the instructions would "lead [the jurors] home and allow [them] to reach a fair verdict in the case." He highlighted certain jury instructions, including No. 12 that required Mrs. Wurster to prove either design defect or failure to provide adequate warnings, not both claims. Counsel for both sides discussed extensively allocation of fault. Mrs. Wurster focused on the lack of a flame arrester and the inexpensive and simple fixes available. TPG directed the jury's attention to evidence suggesting misuse. Mrs. Wurster's counsel went through the questions on the special verdict form in detail with the jury, suggesting to the jury the appropriate answers to certain questions. The jury was well informed about the issues involved in the case and nothing in the jury instructions precluded Mrs. Wurster from fairly presenting or arguing her claims. Under the circumstances, we find no prejudice. See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 720 (8th Cir. 2008) (citing Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001)) ("Reversal is only warranted if a party's substantial rights are prejudiced by instructional error.").

## B.     Post-Sale Failure-to-Warn Claim

Mrs. Wurster argues the district court erred when it granted judgment as a matter of law for TPG on her post-sale failure-to-warn claim. We review a district court's grant of judgment as a matter of law *de novo*, "viewing the evidence in the light most favorable to the nonmoving party while giving that party the benefit of all reasonable inferences." Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008, 1015 (8th Cir. 2001) (citation omitted). Judgment as a matter of law is appropriate only when "all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" Stults v. Am. Pop Corn Co., 815 F.3d 409, 418 (8th Cir. 2016) (quoting Howard v. Mo. Bone & Joint Ctr., Inc., 615 F.3d 991, 995 (8th Cir. 2010)).

Iowa has adopted the four factors found in the Restatement (Third) of Torts: Product Liability § 10 as the elements of a post-sale failure-to-warn claim:

> (a) One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.
>
> (b) A reasonable person in the seller's position would provide a warning after the time of sale if:
>
> > (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
> >
> > (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and

-13-

(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and

(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Lovick v. Wil-Rich, 588 N.W.2d 688, 694 (Iowa 1999) (quoting Restatement (Third) of Torts: Products Liability § 10 (Am. Law Inst. 1997)). "Normally, . . . the jury determines whether a warning of product danger should have been given," but "the particular circumstances of a case may permit a trial court to utilize the [Restatement] factors to determine as a matter of law no duty existed." Id. at 696 (citations omitted).

We agree with the district court that Mrs. Wurster presented insufficient evidence to show TPG had a post-sale duty to warn consumers of the danger posed by its W520 gas cans. It is clear from the record TPG lacked the ability to identify the Wursters—or any other individuals—as users of the gas can. While TPG knew which big box store companies it sold gas cans to, it had no way of knowing which individual stores—in Iowa or elsewhere—were retailing the W520 gas can, as individual stores were given the ability to choose whether to carry TPG's products. Without a direct relationship with users of its gas cans, TPG had no way of determining who purchased the cans and who should have been warned.

"Records [that] indicate classes of product users, or geographically limited markets" may be sufficient where records of "[i]ndividual names and addresses" do not exist. Restatement (Third) of Torts: Products Liability § 10 cmt. e. "But when no such records are available, the seller's inability to identify those for whom warnings would be useful may properly prevent a post-sale duty to warn from arising." Id. Based on the evidence presented at trial, Mr. Wurster was simply a "member of a universe too diffuse and too large for manufacturers or sellers [like TPG] . . . to identify" or warn. Robinson v. S.D. Brandtjen & Kluge, Inc., 500 F.3d

-14-

691, 698 (8th Cir. 2007) (quoting <u>Lewis v. Ariens Co.</u>, 751 N.E.2d 862, 867 (Mass. 2001)).  The district court did not err by granting judgment as a matter of law for TPG.

## III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____