# IN THE COURT OF APPEALS OF IOWA

No. 21-0618
Filed October 19, 2022

THE ESTATE OF JACOB HENKELMAN, JEFF HENKELMAN, Individually and as Co-Administrator for the ESTATE OF JACOB HENKELMAN and STACY HENKELMAN, Individually and as Co-Administrator of the ESTATE OF JACOB HENKELMAN,
    Plaintiffs-Appellants,

vs.

DARBY THOMAS BEAN,
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Warren County, Brad McCall, Judge.

Plaintiffs appeal from an adverse jury verdict in a negligence action.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Matthew M. Boles and Adam C. Witosky of Gribble Boles Stewart & Witosky Law, Des Moines, for appellant.

Jason D. Walke of Walke Law, LLC, West Des Moines, for appellee.

Heard by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Twenty-year-old Jacob Henkelman died at an underage house party after he repeatedly asked fellow partygoer Darby Bean to punch him in the face. Henkelman's parents, individually and on behalf of their son's estate,[1] sued Bean for negligence. After being separately instructed on comparative fault and assumption of risk, the jury returned a verdict finding that Henkelman was more at fault than Bean. The estate appeals.

## I.  Background Facts and Proceedings

On July 21, 2017, when Bean was nineteen years old, he went to a party at his friend's house. Henkelman was standing outside when Bean arrived. The two knew each other from working together at the same grocery store during high school. They had a "casual encounter" outside the house according to Bean—just a, "Hey, how are you? How you been? How you doing?" type conversation. Bean described Henkelman as a "happy-go-lucky kind of jovial guy" and said he got along well with him.

Bean's next memory of Henkelman was in the garage of the house. Both had been drinking beers as the night wore on. Shortly after midnight, Henkelman went up to Bean and said, "I want you to hit me." Bean was taken aback and unsure how to respond. Henkelman kept asking Bean to hit him, so Bean turned to his friend for advice. His friend told Bean something like, "You guys are both adults. As long as you're not going to have a fight, you make your own decision." Bean asked Henkelman where he wanted to be hit, and Henkelman said, "in the

---

[1] We refer to the appellants collectively as "the estate."

face." He told Bean that he could "take it" because he'd been in the military, although that was not true. Bean responded that he didn't want to fight. Henkelman agreed there would be "no retribution, no hard feelings." All of the witnesses who testified at trial said there was no hostility between the two—Henkelman was just asking to be punched.

Coming around to the idea, Bean told Henkelman that he was not going to hit him as hard as he could. The two shook hands, and Henkelman braced himself. Then Bean punched him in the face. Witnesses who saw the punch testified that it didn't look like Bean used his full strength, with one explaining: "He kind of just threw his hand at him. He didn't really step into the punch." But it caused Henkelman to fall backwards and hit his head on the concrete floor of the garage. Henkelman suffered a brain injury that led to his death seven days later.

Bean was criminally charged and pled guilty to involuntary manslaughter. Henkelman's parents, individually and on behalf of his estate, filed a civil suit against Bean, asserting claims of battery and loss of parental consortium. Later, the battery claim was dropped, and a negligence claim was added. In his answer to the estate's petition, Bean pled comparative fault under Iowa Code chapter 668 (2018) and "unreasonable assumption of risk" as affirmative defenses.

A jury trial was held on April 20, 2021. Because of his criminal conviction, Bean admitted that he "was 'at fault' by striking . . . Henkelman in the face," which was a cause of the estate's damages. But he asked for separate jury instructions on Henkelman's comparative fault and assumption of risk. The estate resisted those requests, arguing a separate instruction on assumption of risk was barred by *Rosenau v. City of Estherville*, 199 N.W.2d 125, 133 (Iowa 1972), because of

Bean's comparative fault defense. Borrowing concepts from the criminal realm, the estate also argued that if a comparative fault instruction was given, the jury should also be instructed on provocation and mutual combat. Bean argued *Rosenau* did not preclude his requested instructions because Iowa Code section 668.1 includes "unreasonable assumption of risk" in its definition of fault. And he asserted provocation and mutual combat were not supported by the facts of the case.

The district court sided with Bean and instructed the jury on both comparative fault and assumption of risk, though the verdict form only asked the jury to determine whether Henkelman was at fault and "a cause of any damage to Plaintiffs." The estate's provocation and mutual combat instructions were not given. In its verdict, the jury answered "yes" to both of the above questions before assigning sixty-seven percent of the fault to Henkelman and thirty-three percent to Bean, thereby barring the estate's recovery. *See* Iowa Code § 668.3(1)(a). The estate appeals, asserting the court erred in (1) instructing the jury on assumption of risk; (2) instructing the jury on comparative fault while not instructing on provocation and mutual combat; and (3) permitting a redacted deposition to be read instead of live testimony.

## II. Standard of Review

Alleged errors in jury instructions, and refusal to give requested instructions, are reviewed for the correction of errors at law, *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 570 (Iowa 2017), while the use of a deposition instead of trial testimony is reviewed for an abuse of discretion. *Bauer v. Cole*, 467 N.W.2d 221, 225 (Iowa 1991).

**III.    Analysis**

**A.    Assumption of Risk Instructions**

The primary issue on appeal is whether, in this comparative fault case under Iowa Code chapter 668, the district court committed reversible error in instructing the jury on assumption of risk in three instructions—Instruction 11, defining fault to include assumption of risk; Instruction 17, the comparative fault marshalling instruction; and Instruction 18, instructing the jury on the elements of assumption of risk.  Our jumping off point is our supreme court's decision in *Rosenau*—a case decided before the adoption of Iowa's Comparative Fault Act in 1984.

The issue in *Rosenau* was whether the trial court erred in failing to give a separate instruction on assumption of risk where the jury had been instructed on contributory negligence.  199 N.W.2d at 130.  In examining that question, the court started with a history lesson on the assumption of risk doctrine, which had its genesis in "master-servant law."  *Id.*  The *Rosenau* court explained:

> The term "assumption of risk" as used by courts, assumes two different meanings.  (1) In one sense, it is an alternative expression for the proposition that defendant was not negligent, i.e., either owed no duty or did not breach the duty owed.  This "primary meaning" is illustrated by the case in which an employee is injured by a danger naturally incident to the employment, even though the employer has exercised all reasonable care for his safety.  (2) In its "secondary meaning" the term is used where the injured person acted unreasonably in assuming a particular risk, and the defense of assumption of risk coincides with the defense of contributory negligence.  In this sense, assumption of risk is an affirmative defense to an established breach of duty.

*Id.* at 131.  When used in its secondary meaning, an assumption of risk defense involves the "same elements and facts" as the defense of contributory negligence.  *Coker v. Abell-Howe Co.*, 491 N.W.2d 143, 147 (Iowa 1992); *see also Rini v.*

*Oaklawn Jockey Club*, 861 F.2d 502, 506–07 (8th Cir. 1988) (describing the overlap between the two defenses "as intersecting circles, with a considerable area in common, where both exist and neither excludes the possibility of the other" (quoting W.P. Keeton et al., Prosser & Keeton on Torts § 68, at 481 (5th ed. 1984)). As a result, "[i]nstructing on assumed risk elements as a separate affirmative defense results in duplicitous instructions on a single aspect of the case." *Rosenau*, 199 N.W.2d at 132–33.

To avoid that problem, as well as the confusion that could be generated by instructing on both, the court in *Rosenau* held "that in a common-law tort case in which defendant raises the issue of plaintiff's negligence, the elements of 'assumed risk' shall no longer be pled and instructed on as a separate defense." *Id.* at 133. The court accordingly "abolish[ed] assumption of risk as a separate defense in all cases in which contributory negligence is now available as a defense," though it "retain[ed] assumption of risk as a defense in other cases." *Id.*

Bean argues *Rosenau* "and the interplay between the pre-[c]hapter 668 defenses of 'contributory negligence' and 'assumption of the risk,' have nothing to do with [c]hapter 668 'comparative fault.'"[2] He relies on the definition of fault in section 668.1(1), which expressly includes assumption of risk:

---

[2] This argument alludes to the evolution of comparative fault in our state. When *Rosenau* was decided, "a plaintiff's contributory negligence was a complete bar to recovery." *Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011). In *Goetzman v. Wichern*, the supreme court abandoned contributory negligence in favor of pure comparative negligence. 327 N.W.2d 742, 754 (Iowa 1982), *superseded by statute*, 1984 Iowa Acts ch. 1293, *as recognized in Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 111 (Iowa 2011). "In response to *Goetzman*, our legislature in 1984 enacted Iowa Code chapter 668," *Slager v. HWA Corp.*, 435 N.W.2d 349, 350 (Iowa 1989), which "codified a modified form of comparative fault." *Berry*, 803 N.W.2d at 111.

As used in this chapter, "fault" means one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, *unreasonable assumption of risk not constituting an enforceable express consent*, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

(Emphasis added.) Because there is "nothing in the language of Iowa Code [section] 668.1(1) stating, or suggesting, that 'unreasonable assumption of risk' can only be considered in deciding 'fault' in strict liability cases," Bean contends "it is clear that the concept of 'unreasonable assumption of risk' in the second sentence of [section] 668.1(1) can apply to any [c]hapter 668 case."

Were we writing on a blank slate, this argument might have some merit. But we're not. The same argument was raised and rejected in *Coker*, where the defendant asserted

that the passage of the Iowa Comparative Fault Act restores assumption of risk as a separate defense in negligence cases. [The defendant] points to the language of section 668.1, which specifically includes assumption of risk in the definition of fault, then proceeds to argue that assumption of risk applies to all fault cases, whether negligence or strict liability.

491 N.W.2d at 147. The court disagreed, finding that "[a]fter *Rosenau*, assumption of risk remains a defense in those actions in which contributory negligence is not available, such as common-law strict liability." *Id.*; *accord Slager*, 491 N.W.2d at 148 ("We think assumption of risk is included as fault in our comparative fault statute because there is at least one common-law theory of action included to which the defense has application. That theory is strict tort liability in products liability cases."). In those cases, the court reasoned, "there is no danger of duplicitous theories and instructions, so a defendant is free to plead and argue that

the plaintiff unreasonably encountered and assumed a known risk created by the defendant's negligence."  *Coker*, 491 N.W.2d at 147.

As for the inclusion of "assumption of risk" in the act's definition of fault, the *Coker* court noted section 668.1(1) "includes common-law strict tort liability actions among cases to be tried under the comparative fault system."  *Id.*  The court "assume[d] the legislature was aware that assumption of risk was not a defense in actions in which contributory negligence could be pleaded yet was available in strict liability actions."  *Id.*  So, the court continued, "[i]t was appropriate for the legislature to include assumption of risk among the elements to be considered under comparative fault, as 'fault' includes strict liability."  *Id.* ("The inclusion of assumption of risk in our comparative fault statute does not mandate that the defense be restored in negligence cases, returning tort law to the confusion and repetition that prompted *Rosenau*.").  The court ended its analysis by stating:

> We hold that assumption of risk may not be pleaded or instructed upon as a separate defense in cases in which contributory negligence is an available defense under the Iowa Comparative Fault Act, Iowa Code ch. 668.  Our decision in *Rosenau* remains intact following passage of the act.  The trial court erred in instructing the jury on both Coker's negligence and his assumption of risk.

*Id.*[3]  Bean tries to distinguish *Coker* by arguing the district court "did not submit assumption of risk as a separate affirmative defense but, rather, it instructed the

---

[3] This holding is not an outlier.  *See, e.g.*, Restatement (Third) of Torts: Apportionment of Liability § 3, cmt. c (Am. L. Inst. May 2022 update) ("[C]ourts should abandon the doctrine of implied assumption of risk and therefore should not give the jury a separate instruction.  The court should instruct the jury only on the definition of plaintiff's negligence.  A separate instruction on implied assumption of risk to cover conduct that is within the scope of plaintiff's negligence would require the jury to consider the same conduct twice." (internal citations omitted)).

jury as to how Jacob's 'assumption of risk' could constitute 'fault.'"  That's not what the jury instructions say though.

True, Instruction 11 defined "fault" to mean "one or more acts or omissions towards the person of the actor or of another which constitutes negligence or an unreasonable assumption of the risk not constituting an enforceable express consent."  But Instruction 18 muddied the waters.  In that instruction, the jury was told:

> The Defendant claims Jacob Henkelman unreasonably assumed the risk by asking the Defendant to hit him.  To prove *this defense*, the defendant must prove all of the following propositions:
> 1. Jacob Henkelman knew the risk was present,
> 2. Jacob Henkelman understood the nature of the risk to himself,
> 3. Nevertheless Jacob Henkelman unreasonably, freely and voluntarily took the risk, and
> 4. Jacob Henkelman's assumption of the risk was a cause of Plaintiffs' damage.
> If the Defendant has failed to prove any of these propositions, the Defendant has not proved *this defense*.  If the Defendant has proved all of these propositions, then you will assign a percentage of fault against the plaintiffs and include it in the total percentage of fault, if any, found by you in your answers to the special verdicts.

(Emphasis added.)[4]

Despite this language, Bean maintains that assumption of risk was not submitted to the jury as a separate defense because the instruction's closing paragraph directed the jury to apportion such fault as may have been caused by

---

[4] Bean argues this instruction was permissible because it is "Model Instruction No. 400.9 from the fault section of the Model Jury Instructions."  (Emphasis removed.)  But the comment to the instruction warns: "This instruction should not be used, and assumption of risk is not available as a separate defense, in cases where contributory negligence is available under [c]hapter 668 of the Code.  In strict liability cases, assumption of risk is an available defense."  Unif. Jury Instr. 400.9, cmt.

Henkelman's unreasonable assumption of risk. He also points out that the only "questions the jury was asked to answer on the Verdict Form were (a) if [Henkelman] was at 'fault'; (2) if so, if that fault was 'a cause' of damage; and (c) the apportionment of [Henkelman's] fault (if any) with [Bean's]." As a result, Bean contends "the only affirmative defense the jury was asked to decide was 'comparative fault.'" This argument finds some support in the Eighth Circuit's decision in *Wurster v. Plastics Group., Inc.*, 917 F.3d 608 (8th Cir. 2019).

James Wurster died after a gas can he was holding exploded when he poured gasoline from the can into a fire. *Wurster*, 917 F.3d at 611. His estate sued the manufacturer of the gas can on a negligence theory. *Id.* The jury received two instructions on the plaintiff's unreasonable assumption of risk in his use of the gas can. *Id.* at 612. The first identified assumption of risk as one of three ways the plaintiff was allegedly negligent. *Id.* The second expanded on assumption of risk as a specification of the plaintiff's negligence: "[The defendant] claims that [the plaintiff] unreasonably assumed the risk by pouring gasoline onto the fire or using the vent hole to pour gasoline. To prove this defense, [the defendant] must prove all of the following propositions." *Id.* at 612, 616. The instruction then listed "the four elements of assumption of risk" before directing the jury that if the defendant failed to prove any of them, "it has not proved this defense." *Id.*

The court in *Wurster* found "[t]he instruction's use of the phrase 'this defense' appears at first blush to present the assumption of risk doctrine as both a species of fault and a separate defense," as prohibited by *Coker*. *Id.* at 616. But because the last paragraph of the instruction "simply direct[ed] the jury to apportion

such fault as may have been caused by the unreasonable assumption of risk," the court concluded that "[i]n context, the instruction is simply a definition setting forth the elements of an unreasonable assumption of risk." *Id.*

We do not have that same context here because the marshalling instruction on Henkelman's comparative fault, Instruction 17, did not include "unreasonable assumption of risk" as a specification of his negligence. Instead, that instruction stated:

> The Defendant alleges Jacob Henkelman was at fault because of negligence. The Defendant must prove both of the following propositions:
> 1. Jacob Henkelman was at fault. In order to prove fault, the Defendants must prove Jacob Henkelman was negligent in one or more of the following ways:
>> a. In consuming alcohol to the point of intoxication, or
>> b. *In asking Defendant to strike him in the face.*
> 2. The fault of . . . Jacob Henkelman was a cause of his damage.
> If the Defendant has failed to prove both of these propositions, the Defendant has not proved his defense. If the defendant has proved both of these propositions, then you will assign a percentage of fault against the Plaintiffs and include the Plaintiffs' fault in the total percentage of fault found by you in answering the special interrogatories.

(Emphasis added.)

When the instructions are read together, they do not connect Henkelman's alleged unreasonable assumption of risk to the definition of fault, as the comparative fault marshalling instruction did in *Wurster*, 917 F.3d at 616.[5]  And

---

[5] Along with its reliance on the reasoning of *Wurster*, the dissent cites our supreme court's decision in *Morgan v. Perlowski*, 508 N.W.2d 724, 725 (Iowa 1993), as support for the conclusion that the trial court did not err in instructing the jury on assumption of risk as a species of comparative fault. But *Morgan* did not consider assumption of risk in the context of a challenge to jury instructions, as the dissent suggests. The only instructional error the court considered in *Morgan* was the

even if they had, Instruction 18 would still conflict with our supreme court's holding in *Coker*, which also considered an assumption of risk instruction as a species of fault. 491 N.W.2d at 146 (noting "the trial court instructed the jury on three separate theories of fault," one of which was the plaintiff's "contributory negligence" and another instructing the jury that the plaintiff "may be at fault if he 'unreasonably assumed a risk of harm from the conduct of another'"). By separately instructing on both comparative fault and assumption of risk, the instructions unduly emphasized Henkelman's allegedly negligent act in asking Bean to punch him— the central theme of Bean's defense. *See Rosenau*, 199 N.W.2d at 132–33.

The question remains whether this error was prejudicial. *See Coker*, 491 N.W.2d at 148 ("Error in giving or refusing to give a particular instruction does not warrant reversal unless the error is prejudicial."). "Prejudice results when the trial court's instruction materially misstates the law, confuses or misleads the jury, or is unduly emphasized." *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 16 (Iowa 2019) (citation omitted). Citing *Rivera v. Woodward*, 865 N.W.2d 887, 903 (Iowa 2015), Bean contends there was no prejudice because the "instructions did nothing but place more (not less) of a burden on the defense." But the same would have been true in *Coker*, 491 N.W.2d at 148, which found "that the trial court's giving of both instructions unduly emphasized [the plaintiff's] allegedly negligent acts and is therefore prejudicial." *Accord Manley v. O'Brien Cnty. Rural Elec. Coop.*, 267 N.W.2d 39, 44 (Iowa 1978) (concluding submission of repetitive instructions on assumption of risk in a contributory negligence case

---

defendant's challenge to the negligence marshalling instruction for its failure to set out the elements of a "premises liability type of case." 508 N.W.2d at 729–30.

was reversible error); *Rosenau*, 199 N.W.2d at 133 (finding no error in refusal to give assumption of risk instruction because it involved the same elements and facts as the contributory negligence instruction).

In the end, we find this case is controlled by *Coker*, which requires reversal because of Instruction 18. On remand, the district court should refrain from "making reference to 'assumption of risk'" in its instructions to the jury. *Manley*, 267 N.W.2d at 44; *accord Campbell v. Van Roekel*, 347 N.W.2d 406, 410 (Iowa 1984) ("The court should have instructed the jury in terms of negligence on the part of plaintiff under the usual reasonable person or objective standard without reference to assumption of risk terminology or strictly subjective standards."). "Because this case must be retried, we will consider [the estate's] other challenges to the jury instructions," along with its challenge to the use of the medical examiner's deposition. *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 471 (Iowa 2017) (citation omitted); *accord State v. Dudley*, 856 N.W.2d 668, 674 (Iowa 2014) (remanding case for new trial but addressing issues likely to arise on remand).

### B.     Comparative Fault Instruction

"Proposed instructions must enjoy support in the pleadings and substantial evidence in the record." *Thornton*, 897 N.W.2d at 473 (citation omitted). "Evidence is substantial if a reasonable person would accept it as adequate to reach a conclusion." *Id.* (citation omitted). At the close of the evidence, if "the record is insufficient to support a party's theory of recovery or defense, the court need not submit the theory to the jury." *Id.* (citation omitted).

The estate claims the district court erred in submitting the comparative fault defense to the jury because Henkelman's *requests* to be punched did not cause his death. Instead, according to the estate, it was Bean's *punch* that caused the harm. This argument overlooks that "there may be more than one cause in fact of a plaintiff's damages." *Garr v. City of Ottumwa*, 846 N.W.2d 865, 871 (Iowa 2014); *accord* Dan D. Dobbs et al., *The Law of Torts* § 186 n.12 (2d ed. July 2022 update) ("[N]othing is the result of a single cause in fact."); Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 26, cmt. c (Am. L. Inst. Oct. 2022 update) ("An actor's tortious conduct need only be *a* factual cause of the other's harm."). While it was Bean's punch that caused Henkelman to fall and hit his head on the concrete, there was sufficient evidence in the record that Bean would not have punched Henkelman had he not been asked to do so. *See Mulhern*, 799 N.W.2d at 121 ("It is only in the plainest cases, in which reasonable minds could come to no other conclusion, that we decide a question of contributory negligence as a matter of law."). We accordingly find that the court did not err in instructing the jury on comparative fault.

## C. Provocation and Mutual Combat

The estate relatedly argues the district court erred by failing to instruct the jury on provocation and mutual combat. For provocation, the estate points to cases holding that "words are no justification for violent acts." But those cases apply to "angry" or "provoking" words in criminal cases or civil suits for intentional torts, not a negligence case like this one. *See, e.g.*, *Thompson v. Mumma*, 21 Iowa 65, 66 (1866) ("Angry words are no justification for an assault and battery . . . ."); *Ireland v. Elliott*, 5 Iowa 478, 480 (1858) ("Provoking and insulting

language, constitute a *defence* to acts of violence, in a civil action [for assault and battery], no more than in a criminal prosecution.").  In any event, there were no angry or provoking words—just Henkelman's requests that Bean hit him.

These facts are also ill-suited to a mutual combat instruction.  Mutual combat is more than "a reciprocal exchange of blows"—it requires "a mutual intention, consent, or agreement preceding the initiation of hostilities."  *State v. Spates*, 779 N.W.2d 770, 776 (Iowa 2010) (quoting *People v. Ross*, 66 Cal. Rptr. 3d 438, 447 (Cal. Ct. App. 2007)).  There were no hostilities here.  Instead, Bean and Henkelman were engaged in a friendly encounter with an agreement *not to fight*.  *Cf. Sanders v. State*, 659 S.E.2d 376, 380 (Ga. 2008) ("A charge on mutual combat 'is warranted only when the combatants are armed with deadly weapons and *mutually agree to fight*.'" (emphasis added) (citation omitted)).  And, like with the requested provocation instruction, the estate does not cite any negligence cases applying the concept.  *See* 65A C.J.S. *Negligence* § 332 ("The defenses of mutual combat and that a plaintiff was committing assault and battery at the time of the plaintiff's alleged injury are inapplicable to claims for negligence . . . as such defenses have been supplanted by the doctrine of comparative fault . . . .").

We accordingly find the district court did not err in refusing to give instructions on provocation and mutual combat.

### D.     Deposition

This leaves us with the estate's challenge to the use of the medical examiner's deposition at trial.  Bean sought to read the deposition into the record under Iowa Rule of Civil Procedure 1.704 because the medical examiner was working out of state and unavailable for trial.  The estate objected, arguing:

"There's no indication that any attempt to subpoena him was ever attempted." But that's not required by rule 1.704, which provides that:

> Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial . . . in the same action against any party who appeared when it was taken . . . to do any of the following:
> . . . .
> (3) For any purpose, if the court finds that the offeror was unable to procure deponent's presence at the trial by subpoena; *or that deponent is out of the state and such absence was not procured by the offeror* . . . .

(Emphasis added.) Because a subpoena attempt is not required when the deponent is out of state, as the medical examiner was here, the district court did not abuse its discretion in allowing Bean to use his deposition under rule 1.704(3).[6]

Nor do we find the court abused its discretion in redacting the word "homicide" from the deposition in two places. At the motion-in-limine hearing, the district court asked the estate: "So you don't mind redaction of references to the word 'homicide' or the word 'assault'" from documents admitted into evidence? The estate responded, "No, we do not," only to reverse course at trial when the parties discussed reading the medical examiner's deposition to the jury. Setting aside this about-face, the court found redaction was appropriate under Iowa Rule of Evidence 5.403. Given the wide discretion afforded to the court by rule 5.403, *see State v. Lacey*, 968 N.W.2d 792, 808 (Iowa 2021), we cannot conclude its

---

[6] Given this conclusion, there is no need to decide whether the deposition was also properly used under rule 1.704(4), as alternatively asserted by Bean. *See* Iowa R. Civ. P. 1.704(4) (allowing depositions of "a health care practitioner offering opinions or facts concerning a party's physical or mental condition" to be used at trial).

decision was clearly untenable or unreasonable under the circumstances presented.

The jury knew that Bean pled guilty to involuntary manslaughter—a different offense from murder in terms of intent and severity. *Compare* Iowa Code § 707.1 (defining murder as "kill[ing] another person *with malice aforethought*" (emphasis added)), *with id.* § 707.5(1)(b) (defining involuntary manslaughter as "unintentionally caus[ing] the death of another person *by the commission of an act in a manner likely to cause death or serious injury*" (emphasis added)). The word "homicide" is a weighty one—and one likely to unfairly prejudice Bean in this civil trial. *See State v. Veal*, 930 N.W.2d 319, 335 (Iowa 2019) ("Inevitably, a prospective juror is going to regard murder as a . . . serious crime . . . ."). There was also a likelihood its use would confuse the jury given the special meaning assigned to the term by medical examiners versus its vernacular use. *See State v. Tyler*, 867 N.W.2d 136, 155 (Iowa 2015) (explaining that when an autopsy lists the manner of death as "homicide," it means "[t]he killing of one human being by . . . another" with "no opinion as to the criminality of the killing or the culpability of the killer" (alterations in original) (citations omitted)).

## IV. Conclusion

For these reasons, we find the district court erred in instructing the jury on both comparative fault and assumption of risk. This instructional error prejudiced the estate. We accordingly reverse and remand for a new trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Chicchelly, J., concurs; Ahlers, P.J., partially dissents.

**AHLERS, Presiding Judge** (concurring in part and dissenting in part).

While I agree with most of the majority opinion, I cannot agree with the resolution of the jury-instruction issue related to assumption of risk (section III.A of the majority opinion) and the decision to grant a new trial. Therefore, I concur in part and dissent in part.

I part ways with the majority's resolution because I believe it is built on a faulty premise—namely that the district court instructed on both comparative fault and assumption of risk as separate defenses—which led to the majority's reliance on *Coker v. Abell-Howe Company*. 491 N.W.2d 143 (Iowa 1992). If the district court had instructed on comparative fault and assumption of risk as separate defenses, then I would agree that *Coker* controls because *Coker* repeatedly notes that instructing on both comparative fault and assumption of risk is prohibited when treated as separate defenses. 491 N.W.2d at 146–48 (analyzing assumption of risk as a "separate defense" at least four times). But comparative fault and assumption of risk were not presented to the jury as separate defenses in this case. Assumption of risk was presented as one way in which Jacob Henkelman was at fault within the context of a comparative fault defense, not as a separate defense. We know this from the verdict forms as well as the jury instructions.

The verdict forms provided no avenue by which the jury could have decided the case on assumption of risk as a separate defense. The verdict forms were typical comparative fault verdict forms. As Darby Bean conceded fault and causation, the verdict forms asked the jury to decide only (1) whether Henkelman was at fault, (2) whether his fault was a cause of damages, and (3) what percentage of fault was attributable to Henkelman in comparison to a percentage

of fault attributable to Bean. No part of the verdict forms asked the jury to decide an issue of assumption of risk separate from the concept of comparative fault.

As for the jury instructions, instruction number seventeen was the marshalling instruction for Bean's comparative fault defense. As it is recited verbatim in the majority opinion, I will not repeat it here. I do highlight, however, that one of the particulars listed in that instruction as to how Henkelman was alleged to be at fault was that Henkelman "ask[ed] [d]efendant to strike him in the face." The majority points out that this particular is not labeled in instruction seventeen as "unreasonable assumption of the risk," and it uses this lack of a label to conclude that the next instruction—instruction number eighteen, which spells out the details of what needed to be established in order for Henkelman to be found to have assumed the risk—cannot be viewed as an explanation of the concept of assumption of risk. I respectfully disagree. Although listing Henkelman's request that Bean "strike him in the face" as a particular of Henkelman's claimed fault is not labeled as embodying the concept of assumption of risk, I don't see what else it could be doing other than introducing that concept, which is explained in more detail in the instruction that follows. Instruction number eighteen (which was also recited in full in the majority opinion) spelled out the concept of assumption of risk in more detail. The instruction made it clear that the concept was based on Henkelman "asking the [d]efendant to hit him." It also gave details about what Bean needed to prove in order to establish assumption of risk. The instruction concludes by telling the jury the only thing it is permitted to do if it determines that Bean had established Henkelman assumed the risk, and that was to "assign a percentage of fault against the plaintiffs and include it in the total percentage of

fault, if any, found by you in your answers to the special verdicts." There was no avenue provided in the jury instructions for the jury to do anything with the concept of assumption of risk other than to use it to assess fault as part of deciding the comparative fault question.

In my view, the jury instructions and the verdict forms make it clear that assumption of risk was not submitted as a separate defense. Rather, it was submitted as a species of fault in deciding the comparative fault defense. Treating assumption of risk as a species of fault has support from the text of the statute. *See* Iowa Code § 668.1(1) (2018) (defining "fault" to include "unreasonable assumption of risk not constituting an enforceable express consent"). It also has support in our case law. *Morgan v. Perlowski* is a negligence case based on the plaintiff being assaulted. 508 N.W.2d 724, 725 (Iowa 1993). In *Morgan*, the trial court submitted the case to the jury with instructions to consider assumption of risk as a species of comparative fault. *Id.* at 729. The jury returned a verdict finding the plaintiff forty percent at fault and the defendant sixty percent at fault. *Id.* at 726. On appeal, our supreme court noted *Coker* when it had this to say about the instructions:

> The trial court correctly concluded that the issue of assumption of risk was not a separate defense but would be considered under our comparative fault principles. *See Coker v. Abell-Howe Co.*, 491 N.W.2d 1423, 147 (Iowa 1992). This defense was properly submitted to the jury to be considered under comparative fault.

*Id.* at 729. Based on this statutory and case law authority, I find the trial court appropriately submitted assumption of risk as a species of comparative fault.

Having concluded that assumption of risk was submitted as a form of fault and not as a separate defense, I do not think *Coker* and its ban on "separate

defenses" of comparative fault and assumption of risk applies. If I am wrong in concluding that *Coker* does not apply to this situation, I am in good company, as the Eighth Circuit reached the same conclusion in a negligence case involving jury instructions nearly indistinguishable from those used here. In *Wurster v. Plastics Group, Inc.*, a man suffered fatal burns after a gas can exploded as he poured gas onto a fire. 917 F.3d 608, 611 (8th Cir. 2019). His estate brought a claim against the manufacturer of the gas can. *Id.* Just like this case, the claim was submitted to the jury under a negligence theory. *See id.* at 612. The case was tried under Iowa's comparative fault scheme, and the jury found the decedent more at fault than the manufacturer, resulting in a defense verdict. *Id.* at 611 (citing Iowa Code § 668.3(1)). On appeal, the estate relied on *Coker* to claim instructional error, arguing that the instructions included assumption of risk as both a species of fault in the comparative fault instruction and as a separate defense. *Id.* at 615–16. The relevant jury instructions in *Wurster* were conceptually indistinguishable from those used in the current case. Instruction number thirteen in *Wurster* read:

> TPG claims that James Wurster was at fault by being negligent. In order to prove this claim, it must prove
> 1. James Wurster was negligent in one or more of the following ways:
> > a. misuse of the gas can by attempting to pour gasoline on a fire;
> > b. misuse of the gas can by attempting to pour gasoline from the vent hole; and
> > c. unreasonable assumption of the risk.
> 2. James Wurster's fault was a cause of plaintiffs' damage.
> If TPG failed to prove either of these propositions, TPG has not proved its defense. If TPG has proved both of these propositions, then you will assign a percentage of fault against James Wurster and include his fault in the total percentage of fault found by you in answering the special verdicts.

*Id.* at 612. Instruction number eighteen read:

TPG claims that James Wurster unreasonably assumed the risk by pouring gasoline onto the fire or using the vent hole to pour gasoline.

To prove this defense, TPG must prove all of the following propositions:

1. James Wurster knew the risk was present.

2. James Wurster understood the nature of the risk to himself.

3. Nevertheless, James Wurster unreasonably, freely, and voluntarily took the risk.

4. James Wurster's assumption of the risk was a cause of plaintiffs' damage.

If TPG has failed to prove any of these propositions, it has not proved this defense. If TPG has proved all these propositions, then you will assign a percentage of fault against James Wurster and include it in the total percentage of fault, if any, found by you in your answers to the special verdicts.

*Id.* at 612–13.

Just as the estate does here, the plaintiffs in *Wurster* argued that the instructions improperly included assumption of risk as both a species of fault in the comparative fault instruction and as a separate defense, and that doing so unduly emphasized the decedent's alleged fault and violated the principles of *Coker*. *See id.* at 615–16. The *Wurster* court rejected the challenges. *Id.* at 616. In doing so, the court rejected one of the identical challenges raised here, which is that use of the phrase "this defense" in the explanatory instruction—which happens to be instruction number eighteen both here and in *Wurster*—shows that assumption of risk was submitted as a separate defense in violation of the ban established by *Coker*. The *Wurster* court noted:

The instruction's use of the phrase "this defense" appears at first blush to present the assumption of risk doctrine as both a species of fault and a separate defense.

This view fails, however, to take into account the final director, which simply directs the jury to apportion such fault as may have been caused by the unreasonable assumption of risk. In context, the instruction is simply a definition setting forth the elements of an unreasonable assumption of risk. The inclusion of the phrase "this

defense," while unfortunate, does not direct the jury to do anything other than what it was directed to do in [i]nstruction [number thirteen]. The instruction provided a necessary definition of assumption of risk that was otherwise absent from the jury instructions.

While the instructions are no model of clarity, our review of the record demonstrates no prejudice.

*Id.* This is exactly the situation we have here,[7] and I find the reasoning of the *Wurster* court persuasive. While I agree that use of the phrase "this defense" in instruction eighteen here is unfortunate, the instruction has a conceptually identical "final director" telling the jury that the only thing it could do if it found Henkelman unreasonably assumed risk by asking Bean to hit him was to assign a percentage of fault as part of the comparative fault analysis. *See id.* I also agree with the reasoning of the *Wurster* court to conclude that instruction number eighteen here is simply a definitional instruction setting forth the elements of unreasonable assumption of risk. *See id.* The instructions, when viewed as a whole, properly

---

[7] I find the instructions in *Wurster* to be virtually identical conceptually to those used here. The majority seeks to distinguish the instructions by the fact that the comparative fault marshalling instruction in *Wurster* (instruction number thirteen) listed "unreasonable assumption of the risk" as a species of negligence or fault, whereas the marshaling instruction here (instruction number seventeen) does not mention "unreasonable assumption of the risk" as a species of fault. Instead, instruction seventeen references a specification of fault by Henkelman "asking [d]efendant to strike him in the face." In the majority's view, this difference loses the connection between instructions seventeen and eighteen and requires a different outcome than in *Wurster*. I respectfully disagree. While it may have been better to reference unreasonable assumption of risk in paragraph 1(b) of instruction seventeen, and then follow it up with instruction eighteen providing the details of the concept of assumption of risk, I don't believe the failure to do so is fatal. Paragraph 1(b) of instruction seventeen lists "asking [d]efendant to strike him in the face" as a way Henkelman is alleged to be at fault. In the very next instruction, the jury is told that Bean is claiming Henkelman "unreasonably assumed the risk by asking the [d]efendant to hit him," and then goes on to recite what Bean needed to prove before the jury could assign a percentage of fault for this conduct by Henkelman. To me, these instructions are sufficiently tied together to convey the concepts at issue to the jury such that there was no error and to make *Wurster* squarely on point.

incorporated unreasonable assumption of risk as a species of fault under Iowa's comparative fault scheme. The instructions did not make assumption of risk a stand-alone defense that would run afoul of *Coker*.

To be sure, the instructions here could have been drafted more clearly. That said, instructions are not required to be "technically perfect or even a model of clarity." *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 553 (8th Cir. 2022) (quoting *Hall v. BNSF Ry. Co.*, 958 F.3d 672, 674 (8th Cir. 2020)). All that is required is that the instructions correctly cover the subject of the applicable law when all the instructions are read together. *See State v. Uthe*, 542 N.W.2d 810, 815 (Iowa 1996) ("It is well settled that a trial court need not instruct in a particular way so long as the subject of the applicable law is correctly covered when all the instructions are read together."). In my view, the instructions here adequately covered the applicable law.

For the reasons stated, I respectfully dissent from the majority decision to grant a new trial based on a finding that the instructions incorrectly addressed unreasonable assumption of risk in relation to comparative fault. As I agree with the remainder of the well-crafted majority decision, I concur on all other issues. I would affirm on all issues.